## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## (RICHMOND DIVISION)

| | | |
|---|---|---|
| **TYRONE HENDERSON,** | ) | |
| **For himself and on behalf of all** | ) | |
| **similarly situated individuals.** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.:  3:11-cv-507-REP |
| | ) | |
| **v.** | ) | Judge:  The Honorable Robert E. Payne |
| | ) | |
| **INTERSTATE BRANDS CORPORATION,** | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VERIFICATIONS INCORPORATED,** | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| | ) | |

### CROSS-COMPLAINT AND JURY DEMAND
### OF INTERSTATE BRANDS CORPORATION

NOW COMES Defendant and third-party plaintiff, Interstate Brands Corporation ("IBC"), by and through its undersigned counsel, and for its Cross-Complaint against third-party defendant, Verifications Incorporated ("VI"), states:

### INTRODUCTION

1.      Plaintiff, Tyrone Henderson, for himself and on behalf of all similarly situated individuals (individually and collectively "Henderson," as appropriate), filed the underlying complaint in this action against IBC for allegedly violating certain provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*  A true and correct copy of Henderson's complaint is attached hereto and incorporated herein as Exhibit A.

2.      In his complaint, Henderson alleges that IBC willfully violated the FCRA by failing to provide him with a copy of a "consumer report" and other disclosures mandated by the FCRA at least five days before IBC used the consumer report as a basis for taking an "adverse employment action" against him.

3.      Henderson further alleges that IBC willfully violated the FCRA by failing to make the required FCRA disclosures to him before requesting an "investigative consumer report" from VI.

4.      Henderson has sought, for himself and for two separate putative classes, statutory and punitive damages, injunctive relief, attorneys' fees, expenses, costs, and pre-judgment and post-judgment interest.

5.      IBC has denied, and continues to deny, violating the FCRA, willfully or otherwise.  A true and correct copy of IBC's answer is attached hereto as Exhibit B.

6.      Because of the potential for statutory and punitive damages, attorneys' fees, expenses, and costs to be assessed against IBC, and because of the facts and circumstances to be described hereinafter, notwithstanding IBC's denial of the allegations of Henderson's complaint, IBC brings this Cross-Complaint against VI.

## JURISDICTION AND VENUE

7.      This Court has supplemental jurisdiction over the claims alleged in this Cross-Complaint pursuant to 28 U.S.C. § 1367, as the claims herein alleged are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(b) as VI regularly does business in this district and division.

## PARTIES TO THE CROSS-COMPLAINT

9.      Defendant and third-party plaintiff, IBC, is one of the largest wholesale bakers and distributors of fresh delivered bread and snack cakes in the nation.  Established in the late 1800s, IBC currently operates thirty-six bakeries and supplies its consumers with Wonder Bread, Twinkies, and Hostess Cupcakes.  IBC is a Texas corporation with its principal place of business at 12 E. Armour Boulevard, Kansas City, Missouri  64111.

10.     Third-party defendant, VI, advertises itself as a leading global provider of background screening, employment drug testing, and onboarding solutions.  Boasting of its "laser-like" focus on compliance, accuracy, and dedicated customer service, VI serves more than 50% of the Fortune 100, claims an industry-leading 95% customer retention rate, and takes pride in its ISO certification in both background screening and substance abuse testing operations.  VI is a Minnesota corporation with its principal place of business located at 6900 Wedgewood Road North, Suite 120, Maple Grove, Minnesota  55311.

## FACTS

### The Contractual Relationship Between IBC and VI

11.     At all relevant times, VI has acknowledged and represented that it is considered a "Consumer Reporting Agency" ("CRA") as defined by the FCRA and its state analogues.

12.     At all relevant times, VI, as a CRA, was obligated to comply with all state and federal laws and regulations, including the FCRA.

13.     VI has and continues to hold itself out as a leading global provider of background screening, employment drug testing, and onboarding solutions, and an organization with a reputation for compliance, accuracy and dedicated customer service.

14.     On or about October 20, 2003, IBC and VI entered into a "User Certification And Client Services Agreement," whereby VI agreed to conduct background investigations of IBC's employment applicants in exchange for compensation from IBC.

15.     On or about October 15, 2009, IBC and VI executed an "Amendment To The Contract For Services Agreement," whereby IBC and VI agreed to extend the services provided under the User Certification And Client Services Agreement.

16.     IBC has paid VI all fees agreed upon in both the User Certification And Client Services Agreement and the Amendment To The Contract For Services Agreement and has followed the instructions and restrictions for use placed upon VI's background reports.

17.     At all relevant times, VI used a program called the "VI Application Manager" ("VIAM") to facilitate completion of the background checks of IBC's employment applicants.

18.     VI advertises VIAM not only as a resource for administering employee background checks but also as a complete and automated system for processing and sending the "Adverse Action Notifications" required by employers under the FCRA.

19.     Consistent with its advertisements, VI controls virtually every step in the background check and adverse employment action process for its clients, including IBC.

20.     The process employed by VI to conduct background checks and to administer adverse employment action on behalf of IBC functions as such:  Upon making a conditional offer of employment to a potential employee, IBC enters the applicant's information into the VIAM software.  Once entered, VI employees conduct the background check.

21.     IBC takes no part in the background check information gathering process.

22.     Once VI completes the background check, it sends the report to IBC.  IBC then reviews the report, and, if information is revealed that could potentially disqualify the IBC

employee applicant from consideration for employment, IBC requests, through the VIAM software, that VI commence the adverse employment action process.

23.     Once VI receives notification to begin the adverse employment action process, VI assumes responsibility for sending the "Preliminary Adverse Action Notice" on IBC letterhead. VI purports to include with this notice a copy of the respective background report and a copy of "A Summary of Your Rights Under the Fair Credit Reporting Act." These documents fulfill the responsibility of IBC to make the enumerated disclosures under the FCRA.

24.     The Preliminary Adverse Action Notice directs potential IBC employee applicants to contact VI within three days should they wish to challenge any information in the background report. VI provided IBC with the option of choosing the three day period as opposed to a longer period, and never mentioned or advised IBC that three days could be construed as unreasonably short under the law.

25.     VI's internal compliance department is responsible for conducting all re-investigations that arise from such challenges. IBC is not made aware of any such challenges.

26.     If three days pass without a challenge to information in the background report by the IBC employee applicant, VI automatically, without any further input or action by IBC, sends the "Final Adverse Action" to the IBC employee applicant on IBC letterhead.

27.     IBC has, at all times, reasonably relied upon VI's assurances that it is an industry leader with a focus on compliance and accuracy, and has assumed that VI would conduct background checks of IBC employee applicants in a workmanlike manner that not only minimizes and immediately corrects errors but also fully satisfies VI's obligation to comply with all applicable state and federal laws, including the FCRA.

<u>Henderson's Application, Background Check, and Adverse Employment Action</u>

28.     On or about August 28, 2009, Henderson applied for a position with IBC as a "night packer loader."  As part of his application, Henderson signed an "Interstate Brands Corporation Consumer Report / Investigative Consumer Report Disclosure And Release of Information Authorization," which satisfied IBC's obligation to make the preliminary disclosures required under the FCRA.

29.     On or about November 5, 2009, IBC extended an offer of employment to Henderson, contingent upon the satisfactory completion of his VI background check.

30.     VI completed Henderson's background check on or about November 16, 2009. The VI background check reported a number of criminal convictions from Westmoreland County, Pennsylvania, which Henderson had not reported on his IBC employment application.

31.     These convictions from Pennsylvania were problematic because Henderson had not disclosed them on his employment application.  On or about November 17, 2009, IBC requested that VI begin the adverse employment action process.

32.     VI sent Henderson a preliminary adverse action letter dated November 17, 2009, on IBC letterhead.

33.     On or about November 20, 2009 and within the time proscribed in the preliminary adverse action letter, Henderson, upon receipt of the letter, contacted VI to dispute the accuracy of the information in the VI background report that, if left unresolved, could disqualify him from employment with IBC.

34.     VI responded to Henderson's dispute, reporting that it had re-examined the original records and confirmed the accuracy of its background report.

35.     Almost one month later, VI sent Henderson a final adverse employment action letter on IBC letterhead, dated December 18, 2009, thus ending IBC's consideration of Henderson for employment.

36.     Nearly two years later, Henderson filed separate putative class actions against IBC and VI claiming that that the information in the VI background report was erroneous and alleging that IBC and VI each violated the FCRA.  Henderson's complaint against IBC defines two putative classes:

A.     (a) all IBC employee applicants, (b) who were the subject of a consumer report as part of the IBC application process, (c) where the consumer report contained a disqualifying criminal public record or credit item, (d) after which the IBC employee applicant was not approved or hired for a position with IBC, and (e) to whom IBC failed to provide a copy of the consumer report and other FCRA disclosures at least five business days before the date the employment decision was first noted in IBC's records;

B.     (a) all persons who were the subject of a VI consumer report furnished to IBC, (b) that contained information regarding the person's previous work history that was obtained through personal interviews with the person's prior employers, and (c) which was completed within two years prior to the filing of Henderson's action.

37.     Despite VI's assurances of the accuracy of both its initial background check and its re-investigation, the information that disqualified Henderson from employment with IBC was, in fact, erroneous.

38.     Specifically, the social security number attached to the Pennsylvania convictions did not match the social security number Henderson provided on his IBC employee application and which IBC, in accordance with the authorization it received from Henderson, provided to VI. Upon receipt of Henderson's complaint, IBC was able to confirm that the social security number on Henderson's application did not match that on the Pennsylvania court records by using resources available to any member of the public.

39.     IBC would have hired Henderson but for VI's erroneous background investigation.

40.     VI's erroneous background report and erroneous re-investigation of Henderson's dispute utterly failed to satisfy its touted "laser-like" focus on compliance, accuracy, and dedicated customer service.  Rather, VI's background investigation and re-investigation were so inaccurate that they amounted to no investigation at all.

41.     Had VI performed in accordance with its assurances to IBC and conducted Henderson's background check in a workmanlike fashion, Henderson would have been hired by IBC and IBC would not be exposed to liability under the FCRA.

42.     IBC denied and continues to deny that Henderson or any putative class member failed to receive the FCRA disclosures.  IBC also denied and continues to deny that Henderson or any putative class member were not provided with adequate time to challenge the information in their background reports.  Notwithstanding IBC's denial of the allegations of Henderson's complaint, assuming that an FCRA violation exists, had VI provided the FCRA mandated disclosures with the preliminary adverse employment action notices it sends, and had VI advised IBC that providing employee applicants with three days to challenge their background reports

could be construed as unreasonably short, IBC would not be exposed to class liability under the FCRA.

## CROSS CLAIM ONE:  BREACH OF AN EXPRESS CONTRACTUAL PROVISION

43.     IBC incorporates by reference paragraphs 1-42, as if fully set forth herein.

44.     IBC and VI entered into a valid and legally enforceable contract, under which VI agreed to conduct background checks on IBC's employee applicants through the VIAM software.

45.     IBC fully performed its duties under the contract by paying VI the agreed upon fees; following the instructions VI provided for use of the VIAM software; and honoring the terms of VI's services memorialized in both the User Certification And Client Services Agreement and the Amendment To The Contract For Services Agreement.

46.     At all relevant times, VI was contractually obligated to provide the FCRA-mandated disclosures with every preliminary adverse action notice sent to a potential IBC employee applicant.

47.     At all relevant times, VI was contractually obligated to provide a reasonable period of time for IBC employee applicants to challenge the information in their background reports.

48.     If it is it ultimately determined in this lawsuit that Henderson or any putative class member was not provided with a copy of the consumer report and the other disclosures mandated by the FCRA before an adverse employment action was taken, then VI, which had sole control over the adverse employment action process, breached its express contractual responsibility to provide the FCRA disclosures.

49.     If it is it ultimately determined in this lawsuit that Henderson or any putative class member was not provided with a reasonable amount of time to challenge the information in a VI

background report, then VI, which had sole control over the adverse employment action process thereafter, breached its express contractual responsibility to comply with the FCRA.

50.     IBC has incurred, and will continue to incur, damages as a result of Henderson's lawsuit, in the form of attorneys' fees and costs, and may incur additional damages if Henderson is successful in this lawsuit.

51.     If VI breached its contractual obligations with IBC, then the damages which have been incurred by IBC in the past, and which may be incurred by IBC in the future, have been directly and proximately caused by VI's breach.

52.     IBC is entitled to recover damages, costs, and fees from VI in an amount to be determined by the Court.

### CROSS CLAIM TWO: BREACH OF AN IMPLIED CONTRACTUAL PROVISION

53.     IBC incorporates by reference paragraphs 1-52, as if fully set forth herein.

54.     IBC and VI entered into a valid and legally enforceable contract, under which VI agreed to conduct background checks on IBC's employee applicants.

55.     IBC fully performed its duties under the contract by paying VI the agreed upon fees; following the instructions VI provided for use of the VIAM software; and honoring the terms of VI's services memorialized in both the User Certification And Client Services Agreement and the Amendment To The Contract For Services Agreement.

56.     At all relevant times, the contract between IBC and VI contained a covenant of good faith and fair dealing as an implied term of the contract.

57.     In light of its purported dedication to accuracy, compliance, and customer service, VI's mistaken conclusion that Henderson had undisclosed Pennsylvania criminal convictions, and its further failure to realize that the social security numbers on the employment application and the Pennsylvania court records did not match upon Henderson's dispute, deprived IBC of the

benefits of its contract with VI and thus breached VI's implied covenant of good faith and fair dealing.

58.     If it is it ultimately determined in this lawsuit that Henderson or any other putative class member was not provided with a copy of the consumer report and the other disclosures mandated by the FCRA before an adverse employment action was taken, then VI, having agreed to comply with all applicable state and federal laws, including the FCRA, deprived IBC of the benefits of its contract with VI and thus breached VI's implied covenant of good faith and fair dealing.

59.     If it is it ultimately determined in this lawsuit that Henderson or any other putative class member was not provided with a reasonable period of time to challenge the accuracy of a background report, then VI, as the expert entity that permitted IBC to select three days as an appropriate challenge period, deprived IBC of the benefits of its contract with VI and thus breached VI's implied covenant of good faith and fair dealing.

60.     IBC has incurred, and will continue to incur, damages as a result of Henderson's lawsuit, in the form of attorneys' fees and costs, and may incur additional damages if Henderson is successful in this lawsuit.

61.     The damages which have been incurred by IBC in the past, and which may be incurred by IBC in the future, have been directly and proximately caused by VI's breach.

62.     IBC is entitled to recover damages, costs, and fees from VI in an amount to be determined by the Court.

## CROSS CLAIM THREE:  CONSTRUCTIVE FRAUD

63.     IBC incorporates by reference paragraphs 1-62, as if fully set forth herein.

64.     VI represented to IBC that its background check and adverse employment action process would comply with all applicable state and federal laws, including the FCRA.

65.     VI also represented to IBC that it is an organization dedicated to accuracy, compliance, and customer service.

66.     IBC believed and reasonably relied upon VI's representations that the background check and adverse employment action process would comply with all applicable state and federal laws, including the FCRA.

67.     IBC believed and reasonably relied upon VI's representation that allowing potential employee applicants three days to challenge negative background reports would comply with the FCRA.

68.     IBC believed and reasonably relied upon VI's representations that the background check and adverse employment action process would be conducted accurately and afford IBC employee applicants with adequate time to challenge erroneous background reports and have errors corrected, in compliance with the FCRA.

69.     If it is ultimately determined that VI's background check and adverse employment action process did not comply with the applicable laws, then VI's representations were untrue.

70.     If it is ultimately determined that three days is not a reasonable amount of time for an employee applicant to challenge a negative background report, then VI's representations were untrue.

71.     VI's failure to conduct Henderson's background check accurately in the first instance compounded by its failure to accurately re-investigate upon Henderson's dispute demonstrated that VI's assurances of accuracy were also untrue.

72.     IBC has incurred, and will continue to incur, damages as a result of Henderson's lawsuit, in the form of attorneys' fees and costs, and may incur additional damages if Henderson is successful in this lawsuit.

73.     The damages which have been incurred by IBC in the past, and which may be incurred by IBC in the future, have been directly and proximately caused by VI's constructive fraud.

74.     IBC is entitled to recover damages, costs, and fees from VI in an amount to be determined by the Court.

## CROSS CLAIM FOUR:  FAILURE TO PERFORM IN A WORKMANLIKE FASHION

75.     IBC incorporates by reference paragraphs 1-74, as if fully set forth herein.

76.     IBC and VI entered into a valid and legally enforceable contract, under which VI agreed to conduct background checks on IBC's employee applicants.

77.     IBC fully performed its duties under the contract by paying VI the agreed upon fees; following the instructions VI provided for use of the VIAM software; and honoring the terms of VI's services memorialized in both the User Certification And Client Services Agreement and the Amendment To The Contract For Services Agreement.

78.     At all relevant times, VI had an implied duty to perform the background check and adverse employment action process skillfully, carefully, diligently, and in a workmanlike manner.

79.     VI breached its implied duty to perform skillfully, carefully, diligently, and in a workmanlike manner when it included erroneous information on Henderson's background report based on a failure to confirm matching social security numbers.

80.     VI breached its implied duty to perform skillfully, carefully, diligently, and in a workmanlike manner a second time when it re-investigated Henderson's background check and

erroneously concluded that its initial investigation was accurate and that the social security number on Henderson's employment application matched those on the Pennsylvania criminal convictions.

81.     If it is it ultimately determined in this lawsuit that Henderson or any putative class member was not provided with a copy of the consumer report and the other disclosures mandated by the FCRA before an adverse employment action, then VI, as the entity which had sole control over the background check and adverse employment action process, breached its duty to perform skillfully, carefully, diligently, and in a workmanlike manner.

82.     If it is ultimately determined that three days is not a reasonable amount of time for an employee applicant to challenge a negative background report, then VI, as the expert entity that permitted IBC to select three days as an appropriate challenge period, breached its duty to perform skillfully, carefully, diligently, and in a workmanlike manner.

83.     IBC has incurred, and will continue to incur, damages as a result of Henderson's lawsuit, in the form of attorneys' fees and costs, and may incur additional damages if Henderson is successful in this lawsuit.

84.     The damages which have been incurred by IBC in the past, and which may be incurred by IBC in the future, have been directly and proximately caused by VI's failure to perform the background check and adverse employment action process skillfully, carefully, diligently, and in a workmanlike manner.

85.     IBC is entitled to recover damages, costs, and fees from VI in an amount to be determined by the Court.

**CROSS CLAIM FIVE:  FRAUDULENT INDUCEMENT**

86.     IBC incorporates by reference paragraphs 1-85, as if fully set forth herein.

87.     IBC and VI entered into a valid and legally enforceable contract, pursuant to which VI conducted background checks on IBC's employee applicants.

88.     IBC fully performed its duties under the contract by paying VI the agreed upon fees; following the instructions VI provided for use of the VIAM software; and honoring the terms of VI's services memorialized in both the User Certification And Client Services Agreement and the Amendment To The Contract For Services Agreement.

89.     At all relevant times, VI was contractually obligated to provide the FCRA-mandated disclosures with every preliminary adverse action notice sent to a potential IBC employee applicant.

90.     VI represented to IBC that its background check and adverse employment action process would comply with all applicable state and federal laws, including the FCRA's disclosure and reasonable challenge period requirements.

91.     VI represented to IBC that its background check and adverse employment action process would be accurate and provide for avenues by which errors identified by IBC employee applicants would be promptly corrected.

92.     VI's representation to IBC that its background check and adverse employment action process would comply with all applicable state and federal laws, including the FCRA's disclosure and reasonable challenge period requirements, was material.

93.     VI's representation to IBC that its background check and adverse employment action process would be conducted accurately was also material.

94.     VI's representation to IBC that its background check and adverse employment action process would comply with all applicable state and federal laws, including the FCRA's

disclosure and reasonable challenge period requirements, was made for the purpose of procuring the contract between IBC and VI.

95.     VI's representation to IBC that its background check and adverse employment action process would be conducted accurately was made for the purpose of procuring the contract between IBC and VI.

96.     IBC reasonably relied upon VI's representation that its background check and adverse employment action process would comply with all applicable state and federal laws, including the FCRA's disclosure requirement.

97.     IBC reasonably relied upon VI's representation that, should IBC select three days for an employee applicant to challenge a negative background report, that time period would comply with the applicable law.

98.     IBC reasonably relied upon VI's representation that its background check and adverse employment action process would be conducted accurately.

99.     IBC was induced into contracting with VI by VI's representation that its background check and adverse employment action process would comply with all applicable state and federal laws, including the FCRA's disclosure and reasonable challenge period requirements.

100.    IBC was also induced into contracting with VI by VI's representation that its background check and adverse employment action process would be conducted accurately.

101.    If it is ultimately determined that VI's background check and adverse employment action process did not comply with the FCRA's disclosure requirements, then VI's material representations regarding FCRA compliance were untrue.

102.    If it is ultimately determined that three days is not a reasonable amount of time for an employee applicant to challenge a negative background report, then VI's material representations regarding FCRA compliance were untrue.

103.    The errors in Henderson's VI background report and VI's re-investigation demonstrate that VI's material representations regarding the accuracy of its procedures were untrue.

104.    If it is ultimately determined that VI's background check and adverse employment action process did not comply with the FCRA's disclosure requirement, then VI either willfully or recklessly misrepresented that its background check and adverse employment action process would comply with all state and federal laws.

105.    If it is ultimately determined that three days is not a reasonable amount of time for an employee applicant to challenge a negative background report, then VI either willfully or recklessly misrepresented that its background check and adverse employment action process would comply with all state and federal laws.

106.    Given the ease by which any one can confirm the accuracy of identification on public court records, VI's misrepresentation that it confirmed the accuracy of its background check upon Henderson's dispute was either willful or reckless.

107.    IBC has incurred, and will continue to incur, damages as a result of Henderson's lawsuit, in the form of attorneys' fees and costs, and may incur additional damages if Henderson is successful in this lawsuit.

108.    The damages which have been incurred by IBC in the past, and which may be incurred by IBC in the future, have been directly and proximately caused by VI's fraudulent inducement.

109.    IBC is entitled to recover damages, costs, and fees from VI in an amount to be determined by the Court.

## CROSS CLAIM SIX:  UNJUST ENRICHMENT

110.    IBC incorporates by reference paragraphs 1-109, as if fully set forth herein.

111.    By paying VI fees for conducting its background checks, IBC has conferred a benefit on VI in exchange for an assurance that VI's background check and adverse employment action process would comply with all applicable state and federal laws, including the FCRA's disclosure and reasonable challenge period requirements.

112.    By paying VI fees for conducting its background checks, IBC has conferred a benefit on VI in exchange for an assurance that VI's background check and adverse employment action process would be conducted accurately, in a workmanlike manner, and in compliance with all applicable laws.

113.    By accepting said fees, VI both appreciates and has knowledge of the benefits conferred upon it by IBC.

114.    If it is ultimately determined that VI's background check and adverse employment action process did not comply with the all applicable laws, then VI has retained a benefit in the form of the fees paid by IBC for VI's background check and adverse employment action services under circumstances which would make it inequitable for VI to retain such benefits.

115.    Due to the error in Henderson's VI background report and the further error in VI's re-investigation upon Henderson's dispute, VI has retained a benefit in the form of the fees paid by IBC for VI's background check and adverse employment action services under circumstances which would make it inequitable for VI to retain such benefits.

116.     IBC is entitled to recover damages, costs, and fees from VI in an amount to be determined by the Court.

## CROSS CLAIM SEVEN:  NEGLIGENCE

117.     IBC incorporates by reference paragraphs 1-116, as if fully set forth herein.

118.     VI had a duty to conduct background checks of IBC employee applicants reasonably, including ensuring that the background check process was not only accurate but also complied with all applicable state and federal laws, including the FCRA.

119.     IBC has incurred, and will continue to incur, damages as a result of Henderson's lawsuit, in the form of attorneys' fees and costs, and may incur additional damages if Henderson is successful in this lawsuit.

120.     If VI breached its duty to IBC, then the damages which have been incurred by IBC in the past, and which may be incurred by IBC in the future, have been directly and proximately caused by VI's breach.

121.     IBC is entitled to recover damages, costs, and fees from VI in an amount to be determined by the Court.

## CROSS CLAIM EIGHT:  EQUITABLE INDEMNITY

122.     IBC incorporates by reference paragraphs 1-121, as if fully set forth herein.

123.     If it is it ultimately determined in this lawsuit that Henderson or any putative class member was not provided with a copy of the consumer report and the other disclosures mandated by the FCRA before an adverse employment action was taken, or if it ultimately determined that three days is not a sufficient period of time to permit a challenge to a background report, then VI, as the entity which had sole control over the adverse employment action process, was the "active" or "primary" wrongdoer.

124.    If it is it ultimately determined in this lawsuit that Henderson or any putative class member was not provided with a copy of the consumer report and the other disclosures mandated by the FCRA before an adverse employment action was taken, or if it ultimately determined that three days is not a sufficient period of time to permit a challenge to a background report, then, assuming IBC is found liable at all, IBC could only be considered a "passive" or "secondary" wrongdoer.

125.    As the "active" or "primary" wrongdoer, VI is liable to IBC, the "passive" or "secondary" wrongdoer, for equitable indemnification for any and all damages found to be owed by IBC to Henderson or any putative class member.

126.    IBC is entitled to recover damages, costs, and fees from VI in an amount to be determined by the Court.

## CROSS CLAIM NINE:  VIOLATION OF 15 U.S.C. § 1681e

127.    IBC incorporates by reference paragraphs 1-126, as if fully set forth herein.

128.    15 U.S.C. § 1681e states that, when preparing consumer reports, CRAs such as VI "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

129.    VI's erroneous background report on Henderson and its failure to correct the error upon Henderson's challenge demonstrate VI's failure to comply with its responsibilities under the FCRA.

130.    IBC has incurred, and will continue to incur, damages as a result of Henderson's lawsuit, in the form of attorneys' fees and costs, and may incur additional damages if Henderson is successful in this lawsuit.

131.    The damages which have been incurred by IBC in the past, and which may be incurred by IBC in the future, have been directly and proximately caused by VI's breach of 15 U.S.C. § 1681e.

132.    IBC is entitled to recover damages, costs, and fees from VI in an amount to be determined by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and third-party plaintiff Interstate Brands Corporation respectfully prays as follows:

(1)    For an order awarding damages to IBC in the amount of attorneys' fees and costs that IBC has and will continue to incur in defense of this action;

(2)    For an order awarding damages to IBC in an amount equal to any damages, attorneys' fees, litigation costs, and/or cost of suit assessed against IBC and in favor of Henderson, any other individual, or any class in this lawsuit;

(3)    For an order awarding all allowable costs and disbursements; and

(4)    For such other relief as the Court may deem just and proper.

Dated:  October 18, 2011                          /s/ Joseph W. Clark
                                          Joseph W. Clark
                                          Virginia State Bar No. 42664
                                          JONES DAY
                                          51 Louisiana Avenue, N.W.
                                          Washington, DC  20001-2113
                                          Telephone:  (202) 879-3939
                                          Facsimile:  (202) 626-1700
                                          Email:  jwclark@jonesday.com

                                          Edward M. Wenger (*admitted pro hace vice*)
                                          JONES DAY
                                          51 Louisiana Avenue, N.W.
                                          Washington, DC  20001-2113
                                          Telephone:  (202) 879-3939
                                          Facsimile:  (202) 626-1700
                                          Email:  emwenger@jonesday.com

                                          Attorneys for Defendant
                                          INTERSTATE BRANDS CORPORATION

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was filed with the Court via the CM/ECF system.  The foregoing

was served this 18 day of October, 2011, on counsel for Verifications Incorporated in *Henderson*

*v. Verifications Incorporated*, No. 3:11-cv-00514-REP (E.D. Va.) by email and will also be

served through the summons process.  The foregoing was also served this 18 day of October,

2011 on the following filing users by the CM/ECF system:


Dale Pittman
The Law Office of Dale W. Pittman, P.C.
112-A W Tabb St.
Petersburg, VA 23803-3212
dale@pittmanlawoffice.com

Leonard A Bennett
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, VA 23606
lenbennett@clalegal.com


                             /s/ Joseph W. Clark
                      Joseph W. Clark
                      Virginia State Bar No. 42664
                      JONES DAY
                      51 Louisiana Avenue, N.W.
                      Washington, DC  20001-2113
                      Telephone:  (202) 879-3939
                      Facsimile:  (202) 626-1700
                      Email:  jwclark@jonesday.com

                      Edward M. Wenger (*admitted pro hac vice*)
                      JONES DAY
                      51 Louisiana Avenue, N.W.
                      Washington, DC  20001-2113
                      Telephone:  (202) 879-3939
                      Facsimile:  (202) 626-1700
                      Email:  emwenger@jonesday.com

                      Attorneys for Defendant
                      INTERSTATE BRANDS CORPORATION