UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| TYRONE HENDERSON,<br>For himself and on behalf of all<br>similarly situated individuals,<br><br>    Plaintiff,<br><br>v.<br><br>INTERSTATE BRANDS CORPORATION<br><br>    Defendant/Third-Party Plaintiff,<br><br>v.<br><br>VERIFICATIONS INCORPORATED,<br><br>    Third-Party Defendant. | Civil Action No. 3:11cv507-REP |

**VERIFICATIONS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS CROSS-COMPLAINT**

VERIFICATIONS, INC. ("Verifications"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Local Rule 7(f), submits this Memorandum in support of its Motion to Dismiss the Cross-Complaint filed by Defendant/Third-Party Plaintiff INTERSTATE BRANDS CORPORATION ("IBC").

### I.    INTRODUCTION

On August 5, 2011, Plaintiff Tyrone Henderson, for himself and on behalf of all similarly situated individuals (individually and collectively "Plaintiff"), filed a complaint against IBC for allegedly violating certain provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* (the "Class Complaint"). (Docket No. 1.) IBC filed its Answer to Plaintiff's Class Complaint on September 2, 2011. (Docket No. 4.) IBC was the only named Defendant.

On October 18, 2011, IBC filed a pleading against Verifications, previously a non-party to this action, titled "Cross-Complaint and Jury Demand of Interstate Brands Corporation," docketed as "Third Party Complaint against Verifications Incorporated" (referred to herein as the "Cross-Complaint"). (Docket No. 13.) IBC filed its Cross-Complaint without seeking or receiving leave of Court.

IBC's Cross-Complaint, which is twenty-one pages and one hundred thirty-two numbered paragraphs long, purports to allege the following nine claims against Verifications:

| | |
|---|---|
| Cross Claim One: | Breach of an Express Contractual Provision |
| Cross Claim Two: | Breach of an Implied Contractual Provision (Good Faith and Fair Dealing) |
| Cross Claim Three: | Constructive Fraud |
| Cross Claim Four: | Failure to Perform in a Workmanlike Fashion |
| Cross Claim Five: | Fraudulent Inducement |
| Cross Claim Six: | Unjust Enrichment |
| Cross Claim Seven: | Negligence |
| Cross Claim Eight: | Equitable Indemnity |
| Cross Claim Nine: | Violation of 15 U.S.C. § 1681e |

Despite IBC's litany of desired claims, the dispute between IBC and Verifications is nothing more than a claim for breach of contract: IBC contends that Verifications did not perform services in accordance with the agreement between IBC and Verifications. (Cross-Compl. at ¶¶ 44-49.) The remaining eight claims are simply an impermissible attempt by IBC to manufacture additional causes of action by restating, recasting and reconfiguring its breach of contract claim into various unavailable common law, equitable and statutory claims. Moreover, the Cross-Complaint completely ignores IBC's own obligations and liabilities under the FCRA

and similarly fails to recognize the respective contractual rights and obligations agreed to by Verifications and IBC.

For these reasons, and as further detailed herein, Cross Claims Two through Nine of IBC's Cross-Complaint fail to state a claim upon which relief can be granted against Verifications and should be dismissed with prejudice.

## II.     FACTS AND BACKGROUND INFORMATION

The respective duties and obligations of IBC and Verifications are memorialized in the agreement between them. On or about October 20, 2003, IBC and Verifications entered into a "User Certification And Client Services Agreement," whereby Verifications agreed to conduct background investigations on IBC's employment applicants in exchange for compensation from IBC. (*Id*. at ¶ 14.) A copy of the User Certification and Client Services Agreement is attached as Ex. A.[1]

The User Certification identifies and defines each party's respective contractual duties and obligations. Ex. A. The User Certification provides:

> *[IBC] agrees that if adverse employment action is to be taken, based either in whole or part on information provided by [Verifications] in a Consumer Report, [IBC] will comply with adverse action procedures as defined in FCRA Regulations.*

Ex. A at ¶ 1E. In addition, the User Certification expressly states:

> *[IBC] acknowledges that it has had an opportunity to consult with its own legal counsel regarding the laws and regulations applicable to this Agreement, including without limitation FCRA Regulations, and is solely responsible for its compliance therewith.*

---

[1] When a plaintiff fails to introduce a pertinent document as part of its complaint, the defendant may attach the document to a motion to dismiss the complaint and the court may consider the same without converting the motion to one for summary judgment. *Gasner v. County of Dinwiddie*, 162 F.R.D. 280 (E.D. Va. 1995), *aff'd.*, 103 F.3d 351 (4th Cir. 1996).

Ex. A at ¶ 5.

IBC and Verifications executed an "Amendment To The Contract For Services Agreement" to extend the services provided under the User Certification And Client Services Agreement on or about October 15, 2009. (Cross-Compl. at ¶ 15.)

Consistent with the agreement between IBC and Verifications, on or around November 2009, IBC requested that Verifications complete a background check on Plaintiff after he applied for a position with IBC. (*Id*. at ¶ 30.) On or about November 16, 2009, Verifications provided IBC with a background report on Plaintiff, which listed criminal convictions from Westmoreland County, Pennsylvania. (*Id*.)

On or about November 17, 2009, IBC requested that Verifications begin the adverse employment action process. (*Id*. at ¶ 31.) A preliminary adverse action letter was sent to Plaintiff on or about November 17, 2009. (*Id*. at ¶ 32.) On or about November 20, 2009, and within the time proscribed in the preliminary adverse action letter, Plaintiff contacted Verifications to dispute the accuracy of information in the background report. (*Id*. at ¶ 33.) In response, Verifications worked to verify the accuracy of the information contained in the background report. A final adverse action letter was sent to Plaintiff on or about December 18, 2009. (*Id*. at ¶ 35.)

Nearly two years later, Plaintiff filed separate putative class actions against IBC and Verifications alleging violations of the FCRA. (*Id*. at ¶ 36.); *see also* Case No. 3:11-cv-00514-REP, Docket No. 1. IBC has denied any violation of the FCRA and denied that Plaintiff is entitled to the relief sought in his Class Complaint. (Cross-Compl. at ¶ 42.) Despite these denials, IBC has filed a Cross-Complaint against Verifications asserting that, in the event a

violation of the FCRA is found to exist, Verifications is responsible for indemnifying IBC for all damages it has, and may, suffer as a result of Plaintiff's claims. *Id*.

### III.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Gasner*, 162 F.R.D. at 281. A complaint should be dismissed when it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Alexander v. Gilmore*, 202 F. Supp. 2d 478, 480 (E.D. Va. 2002) ("Rule 12(b)(6) allows a court to dismiss claims based on dispositive issues of law."). Thus, a 12(b)(6) motion should be granted whenever it is clear that a "plaintiff can prove no set of facts which would entitle him to [the] relief [sought]." *Energy Recovery, Inc. v. Hauge*, 133 F. Supp. 2d 814, 817 (E.D. Va. 2000).

In considering a Rule 12(b)(6) motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). On a motion to dismiss, however, courts are not bound to accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Nor is the court "bound to accept [plaintiff's] conclusory allegations regarding the legal effect of the facts alleged." *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995).

### IV.  ARGUMENT AND LEGAL AUTHORITIES

**A.  IBC's Cross-Complaint Is Not Properly Before The Court.**

As a threshold matter, IBC's "Cross-Complaint" is not properly before the Court. On October 3, 2011, this Court issued a Scheduling Order stating that "[w]ithin fifteen (15) days after entry of this Order, motions for joinder of additional parties or amendments of pleadings shall be filed." (Docket No. 8.) In addition, Rule 14(a) of the Federal Rules of Civil Procedure

5

provides that a "third party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer."

While the pleading filed by IBC is titled a "Cross-Complaint," it is in fact third party complaint, as Verifications was not named as a party in the Plaintiff's Class Complaint against IBC. *Compare* Fed. R. Civ. P. 13(g) ("[a] pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action…"), *with* Fed. R. Civ. P. 14(a) ("[a] defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it.").

Here, IBC did not file its Cross-Complaint within the 14 day period following service of its Answer, and IBC did not move for joinder of Verifications as an additional party pursuant to the Court's Scheduling Order or obtain leave of Court before filing the Cross-Complaint as required by Rule 14(a). For those reasons, the Cross-Complaint is not properly before this Court and it should be dismissed.

B. **IBC Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing.**

In Cross Claim Two, IBC attempts to assert a claim for breach of an implied covenant of good faith and fair dealing. (Cross-Compl. at ¶ 56.) In support of this claim, IBC asserts that Verifications' alleged failure to perform certain contractual duties deprived IBC of the benefits of its contract with Verifications, and therefore, constituted a breach of the implied covenant of good faith and fair dealing. (*Id.* at ¶¶ 57-59.) Cross Claim Two fails as a matter of law.

Under Virginia law, every contract contains an implied covenant of good faith and fair dealing; however, "a breach of those duties only gives rise to a breach of contract claim, not a separate cause of action." *Frank Brunckhorst CO., L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp. 2d

452, 462 (E.D. Va. 2008) (citing *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 251 Va. 28, 33 (1996) (holding that "the failure to act in good faith ... does not amount to an independent tort" and "the breach of the implied duty ... gives rise only to a cause of action for breach of contract")); *see also L & E Corp. v. Days Inns of America, Inc.*, 992 F.2d 55, 59 n.2 (4th Cir. 1993) (noting that Virginia does not recognize an independent claim for breach of the implied covenant of good faith and fair dealing); *Healy v. Chesapeake Appalachia, LLC*, No. 1:10-cv-00023, 2011 WL 24261, at *14 (W.D. Va. Jan. 5, 2011) ("Virginia law does not recognize a separate cause of action for breach of implied duties arising out of a written contract.").

Accordingly, Virginia law does not provide, and IBC therefore cannot state, a claim for breach of the implied covenant of good faith and fair dealing. Cross Claim Two fails as a matter of law and should be dismissed with prejudice.

### C. IBC Fails To State A Claim For Constructive Fraud And Fraud In The Inducement.

In Cross Claims Three and Five, IBC seeks to assert claims for constructive fraud and fraud in the inducement. These claims are nothing more than a thinly veiled attempt to recast IBC's breach of contract claim as a tort action. In fact, IBC's fraud claims fail for three reasons.

First, to state a claim for either constructive fraud or fraud in the inducement, IBC must allege that Verifications made a false statement of material fact. *See Douros v. State Farm Fire & Cas. Co.*, 508 F. Supp. 2d 479, 484 (E.D. Va. 2007) and *Fransmart, LLC v. Freshii Dev., LLC*, 768 F. Supp. 2d 851, 864 (E.D. Va. 2011) (respectively laying out the elements of constructive fraud and fraud in the inducement). Virginia law "distinguishes between a statement that is false when made and a promise that becomes false only when the promisor later fails to keep his word. The former is fraud, the latter is breach of contract." *Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988) (citing *Colonial Ford Truck Sales, Inc. v.*

*Schneider*, 228 Va. 671, 677 (1985)); *see also Tidewater Beverage Services, Inc.*, 907 F. Supp. 943, 947 (E.D. Va. 2003) (In order to state a cause of action for fraud, plaintiff was required to "allege a misrepresentation of past or present facts, not unfulfilled promises or future events."); *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 454-55 (E.D. Va. 2009) ("[A] mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character." (citations omitted)). "The reason [for this rule] is obvious. Without [it] almost every breach of contract could be claimed to be a fraud." *Lissmann*, 848 F.2d at 53.

In support of Cross Claims Three and Five, IBC relies upon three representations allegedly made by Verifications, which even if taken as true for purpose of a motion to dismiss, do not give rise to a claim of constructive fraud or fraud in the inducement. IBC claims that Verifications defrauded it by representing to IBC that its background check and adverse employment process "would comply with all applicable state and federal laws, including the FCRA," (Cross-Compl. ¶¶ 64, 90) and "would be accurate and provide avenues by which errors . . . would be promptly corrected." (*Id*. at ¶ 91.) Such statements are clearly promises to perform certain acts in the future and are not statements of existing fact. *See Wal-Mart Stores, Inc. v. J.A. Fielden Co., Inc.*, 440 F. Supp. 2d 523, 529 (W.D. Va. 2006) (dismissing plaintiff's fraud claim based on unfulfilled promises and future events as an impermissible attempt to restate plaintiff's contract claim).

The third representation IBC claims was fraudulent was the statement to IBC "that [Verifications] is an organization dedicated to accuracy, compliance, and service." (Cross-Compl. at ¶ 65.) This alleged representation also fails to rise to the level of being a statement of material and present existing fact. *See McMillion v. Dryvit Systems, Inc.*, 262 Va. 463, 472

(2001) (finding that statements in an advertising brochure were merely opinions about how the defendant's product might work, not misrepresentations of present facts). Accordingly, IBC cannot alleged the necessary elements of a fraud claim and Cross Claims Three and Five should be dismissed with prejudice.

Second, the economic loss doctrine prohibits IBC from recovering "purely economic losses" by simply recasting its contract claim as a tort claim. *Sensenbrenner v. Rust, Orling & Neale*, 236 Va. 419, 425 (1998); *see also Filak*, 267 Va. at 618 ("[L]osses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts."). The rationale behind this rule is that tort law is not designed to compensate parties for losses suffered as a result of a breach of a duty assumed only by agreement. *Id*. In determining whether a plaintiff may state a cause of action in tort, the source of the duty violated must be ascertained. *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 558 (1998). If the duty does not exist absent an agreement establishing that duty, then it is a duty based in contract. *Oleyar v. Kerr*, 217 Va. 88, 90 (1976). As discussed *supra*, any duty owed by Verifications to IBC arises solely from the contractual relationship between the parties. Ex. A. Accordingly, IBC's fraud claims are barred by the economic loss doctrine and should be dismissed with prejudice.

Finally, even if the Court were to determine that IBC has properly alleged statements of material fact that were false when made and that Verifications owed IBC a duty independent of its contractual obligations, Cross Claims Three and Five still fail as a matter of law because they do not satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b), which states that a party alleging fraud "must state with particularity the circumstances constituting fraud[.]" "To satisfy Rule 9(b), a plaintiff must plead circumstances such as the time, place, content, and

identity of authorship of any alleged misrepresentation." *Goldstein v. Malcolm G. Fries Y Assocs.*, 72 F. Supp. 2d 620, 627 (E.D. Va. 1999). Here, IBC's Cross-Complaint completely fails to allege the time, place, and identity of authorship of any alleged misrepresentation, and on this basis, Cross Claims Three and Five should also be dismissed.

D. <u>**IBC Fails To State A Claim For Failure To Perform In A Workmanlike Fashion.**</u>

In Cross Claim Four, IBC attempts to argue that "Verifications breached its implied duty to perform skillfully, carefully, diligently, and in a workmanlike manner." (Cross-Compl. at ¶¶ 76-82.) IBC complains that Verifications breached this implied duty when it included erroneous information on Plaintiff's background report. (*Id.* at ¶¶ 79-80.) In other words, IBC contends that Verifications' alleged failure to provide services in accordance with the terms of the contract between Verifications and IBC constitutes a breach of Verifications' implied duty to perform skillfully, carefully, diligently, and in a workmanlike manner. (*Id.*)

IBC's claim for failure to perform in a workmanlike fashion fails as a matter of law. "While Virginia law has recognized an implied warranty [to perform services in a workmanlike manner] in the context of construction contracts . . . [t]he Virginia Supreme Court has not expanded this doctrine beyond the limited context of these cases[.]" *Goddard v. Protective Life Corp.*, 82 F. Supp. 2d 545, 556-57 (E.D. Va. 2000). Recognizing this fact, the court in *Goddard* ultimately held that "in the absence of such authority, this court, likewise, should not so extend." *Id*. Here, IBC has not and cannot identify a contract falling within the narrow warranty recognized by the Virginia Supreme Court, nor has IBC articulated any basis for extending this warranty beyond the context of construction law.

Cross Claim Four should be dismissed with prejudice because, within the context of this case, there are no facts IBC can allege that would state a claim for failure to perform in a workmanlike fashion. *Id.*

E.  **IBC Fails To State A Claim For Unjust Enrichment.**

In Cross Claim Six, IBC alleges that Verifications was unjustly enriched when it accepted payments from IBC, but failed to provide accurate background checks and an adverse employment action process that complied with all applicable laws. (Cross-Compl. at ¶¶ 111-112.) However, "[i]f a court finds that an express contract exists between the parties, either by determination of the court or stipulation of the parties, then the equitable remedy of unjust enrichment is unavailable." *Virginia Elec. & Power Co. v. Broe Growth Capital LLC*, No. 3:07-cv-224, 2007 WL 2071726, at *2 (E.D. Va. July 17, 2007); *see also Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988) ("An action for unjust enrichment is quasi-contractual in nature and may not be brought in the face of an express contract."); *Inman v. Klockner-Pentaplast of Am., Inc.*, 467 F. Supp. 2d 642, 655 (W.D. Va. 2006) (dismissing unjust enrichment claim on 12(b)(6) motion because both parties acknowledged the existence of a valid express contract from which the dispute arose). This is because Virginia law prohibits simultaneous recovery through both equitable and legal remedies, and if a full remedy at law is available, then one based on equitable principles is barred. *Virginia Elec. & Power*, 2007 WL 2071726, at *2.

In this action, not only does IBC concede that an express contract exists between it and Verifications, IBC alleges a breach of that express contract as the first count of its Cross-Complaint. (Cross Comp. ¶¶ at 14-16; 44-47.) Accordingly, IBC, by its own admission, has an

adequate remedy at law and is not entitled to recover on the equitable theory of unjust enrichment. On this basis, Cross Claim Six should be dismissed with prejudice.

F. **IBC Fails To State A Claim For Negligence.**

In Cross Claim Seven, IBC asserts that Verifications was negligent in failing to "conduct background checks of IBC employee applicants reasonably, including ensuring that the background check process was not only accurate but also complied with all applicable state and federal laws, including the FCRA." (*Id*. at ¶ 118.) As explained in the Cross-Complaint and addressed *supra*, IBC and Verifications entered into a User Certification And Client Services Agreement whereby Verifications agreed to conduct background investigations of IBC's employment applications in exchange for compensation by IBC. (*Id*. at ¶ 14.); Ex. A. The User Certification identifies and defines each party's respective contractual duties and obligations. Ex. A. Absent the contractual agreement between IBC and Verifications, no duties or obligations would exist between them. Ex. A.

Once again, the economic loss rule prevents IBC from seeking to recover in tort for a claim based solely on a breach of a duty created by contract. *Sensenbrenner*, 236 Va. at 425; *see also McDevitt*, 256 Va. at 559 ("A tort action cannot be based solely on a negligent breach of contract."); *Filak*, 267 Va. at 618 ("[L]osses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts."). In determining whether a duty stems from contract or tort, the "source of the duty violated" must be ascertained. *McDevitt*, 256 Va. at 558. If a plaintiff brings a claim for an act or an omission which, without proof of a contract, would not exist, then the action is founded on contract, and not upon tort. *Id*.

Verifications' duty to reasonably "conduct background checks of IBC employee applicants" exists solely by virtue of its contract with IBC. (Cross-Compl. at ¶ 118.) Verifications owed no corresponding common law duty to IBC. Accordingly, IBC has no claim in tort, whether it be for negligence or otherwise, and Cross Claim Seven should be dismissed with prejudice.

### G.  IBC Fails To State A Claim For Equitable Indemnification.

In Cross Claim Eight, IBC seeks to state a claim for equitable indemnification. In support of this claim, IBC alleges that if it is ultimately determined that Plaintiff or any putative class member was not provided with a copy of the consumer report and other disclosures mandated by the FCRA before an adverse employment action was taken, or if it is ultimately determined that three days is not a sufficient period of time to permit a challenge to a background report, "then [Verifications] as the entity which had sole control over the adverse employment action process, was the 'active' or 'primary' wrongdoer" and thus, is liable to IBC, the "'passive' or 'secondary' wrongdoer." (Cross-Compl. ¶¶ at 123-125.)

Although Virginia courts recognize the availability of equitable indemnification under certain circumstances, when a third-party plaintiff seeks indemnification from a third-party defendant based on claims that arise solely under a comprehensive federal statutory scheme such as the FCRA, state law is inapposite and cannot create a cause of action, equitable or otherwise, for indemnification. *Bowman v. Selection Mgmt. Sys., Inc.*, No. 7:06-cv-00110, 2010 WL 3783446, at *1-2 (W.D. Va. Sept. 28, 2010); *Boatner v. Choicepoint Workplace Solutions, Inc.*, No. CV 09-1502-MO, 2010 WL 1838727, at *4 (D. Or. May 6, 2010). Rather, a right to indemnification for FCRA claims may arise only "through the affirmative creation of a right of action by Congress, either explicitly or by clear implication; or second, through the power of the

13

federal courts to fashion a common-law right[.]" *Texas Instruments, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638 (1981).

Courts examining this issue have concluded that there is no right to contribution or indemnification under the FCRA or federal common law. *Bowman*, 2010 WL 3783446, at *1-2 (citing *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*, No. 05-7097, 2008 WL 630883, at *4 (N.D. Ill. Mar. 5, 2008) ("[w]e begin with the statute itself, which plainly does not grant Ameriquest any right to seek indemnification or contribution from CRAs"); *Meyers v. Freedom Credit Union*, No. 05-3526, 2007 WL 2753172, at *7 (E.D. Pa. Sept. 21, 2007) ("[i]t is clear that FCRA does not expressly create a cause of action for indemnity or contribution"); *Cintron v. Savit Enter.*, No. 07-cv-04389, 2009 WL 971406, at *2 (D.N.J. Apr. 8, 2009) (stating that courts have found that the FCRA "[leaves] no room for a court to infer a right to contribution or indemnification"); *McSherry v. Capital One FSB*, 236 F.R.D. 516, 520 (W.D. Wash. 2006) ("[s]o far, it does not appear that any court has found that there is a right to indemnity or contribution under the FCRA"); *Kudlicki v. MDMA, Inc.*, No. 1308617, 2006 WL 1308617, at *4 (N.D. Ill. May 10, 2006) (observing that "several federal district courts have concluded that the FCRA does not allow for the right to indemnification because it is not found in the statutory framework of the FCRA").

In *Boatner*, a job applicant sued his potential employer claiming the employer violated FCRA provisions regarding notice and adverse actions against consumers after it received an allegedly inaccurate consumer report from a third-party vendor. 2010 WL 1838727, at *1. The employer in turn cross-claimed against the vendor for contribution and indemnification. *Id*. The vendor moved to dismiss pursuant to Rule 12(b)(6). *Id*. After finding that the FCRA does not

14

provide an explicit or implicit right to indemnification, the court held that the employer's claim for equitable indemnification must too fail. *Id*. at 4.

Similarly, in *Bowman*, a background check company filed a third-party complaint against potential employer for contribution related to FCRA claims brought by job applicant against company. 2010 WL 3783446, at *1. The Court held that because the job applicant's claims were solely based on the FCRA, which the court recognized does not provide a claim for contribution, Virginia law was inapposite and could not apply to provide company with a cause of action for contribution. *Id.*

The underlying claims against IBC have been brought solely under the FCRA, and therefore, IBC cannot assert a claim for equitable indemnification under Virginia law. On this basis, Cross Claim Seven should be dismissed with prejudice.

H.  **IBC Fails To State A Claim For Violation Of 15 U.S.C. 1681e.**

In Cross Claim Nine, IBC attempts to claim that Verifications is liable to it for violating the provisions of 15 U.S.C. § 1681e. (Cross-Compl. at ¶¶ 128-129.) However, IBC lacks the statutory standing necessary to assert such a claim. Section 1681o(a) of the FCRA states that "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any *consumer* is liable to that *consumer* in an amount equal to the sum of--(1) any actual damages sustained by the *consumer* as a result of the failure . . ." 15 U.S.C. § 1681o(a) (emphasis added). Section 1681a(c) defines the term "consumer" to mean "an individual," which IBC is not. 15 U.S.C. § 1681a(c).

Rather, IBC is a "user" under the FCRA. 15 U.S.C. § 1681m; *see also Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 973 (4th Cir. 1987) ("[T]he term 'user' includes 'the ultimate destination of a credit report' as well as 'the person who acquires a credit

15

report for another.'" (citations omitted)). Users do not have statutory standing to assert a cause of action for violation of 15 U.S.C. 1681e. *Kent v. Am. Tenant Screen, Inc.*, No. 97-2838, 1997 WL 876960, at *1 (D. Md. Dec. 8, 1997), *aff'd*, 139 F.3d 890 (4th Cir. 1998) ("Users are sometimes subject to liability under the [FCRA], but are not entitled to recover under it." (internal citations omitted)); *Boatner*, 2010 WL 1838727, at *2 ("Because the FCRA regulates users in order to benefit *consumers*, [users are not members] of the class the FCRA was intended to benefit.") (citied with favor by W.D. Va.).

Because IBC can allege no set of facts that would entitle it to assert a claim for relief under 15 U.S.C. § 1681e, Cross Claim Nine should be dismissed with prejudice.

## V. CONCLUSION

The dispute between IBC and Verifications is nothing more than a claim for breach of contract. IBC contends that Verifications did not perform in accordance with the agreement between them. Verifications denies that it breached the agreement. That is the issue, and the only issue, to be resolved.

As demonstrated *supra*, IBC's remaining eight claims are a thinly veiled attempt by IBC to manufacture additional claims by recasting its breach of contract claim as various other desired causes of action. A function of a motion to dismiss is to test the sufficiency of a complaint and dismiss those claims without legal support so that the Court and the parties can focus their efforts on the true issue(s) in dispute. Accordingly, in keeping with that goal, the Court should dismiss Cross Claims Two through Nine and allow IBC and Verifications to move forward with the breach of contract claim.

For the foregoing reasons, Verifications, Inc., respectfully requests that the Court grant its Motion to Dismiss the Cross-Complaint with prejudice.

Respectfully submitted,

VERIFICATIONS, INC.

_____/s/_____
Charles K. Seyfarth (Va. Bar No. 44530)
LeCLAIRRYAN, A Professional Corporation
Riverfront Plaza – East Tower
951 E. Byrd Street, Eighth Floor
Richmond, Virginia 23219
Telephone: (804) 916-7159
Facsimile:  (804) 916-7259
Charles.Seyfarth@leclairryan.com

Megan S. Ben'Ary (Va. Bar No. 47349)
Nicole Pszczolkowski (Va. Bar. No. 80826)
LeCLAIRRYAN, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, VA  22314
Telephone: (703) 684-8007
Facsimile:  (703) 647-5983
Megan.Benary@leclairryan.com
Nicole.Pszczolkowski@leclairryan.com

***Counsel for Verifications, Inc.***

## CERTIFICATE OF SERVICE

      I hereby certify that on this 10th day of November, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send a notification of such filing to the following:

Dale W. Pittman, Esquire  
The Law Office of Dale W. Pittman, P.C.  
112-A W. Tabb St.  
Petersburg, Virginia 23803  

Leonard A. Bennett, Esquire  
Consumer Litigation Associates, P.C.  
12515 Warwick Blvd., Suite 100  
Newport News, Virginia 23606  

Christopher C. North, Esquire  
The Consumer & Employee Rights Law Firm, P.C.  
751-A Thimble Shoals Blvd.  
Newport News, Virginia 23606  

*Counsel for Plaintiff*

Joseph W. Clark, Esquire  
Edward M. Wenger  
Jones Day  
51 Louisiana Avenue, N.W.  
Washington, DC  20001  

*Counsel for Interstate Brands Corporation*

                                                  /s/  
                                      Megan S. Ben'Ary (Va. Bar No. 47349)  
                                      LeCLAIRRYAN, A Professional Corporation  
                                      2318 Mill Road, Suite 1100  
                                      Alexandria, VA  22314  
                                        Telephone: (703) 684-8007  
                                        Facsimile:  (703) 647-5983  
                                        Megan.Benary@leclairryan.com  

                                        *Counsel for Verifications, Inc.*