**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(RICHMOND DIVISION)**

| | | |
|---|---|---|
| **TYRONE HENDERSON,** | ) | |
| **For himself and on behalf of all** | ) | |
| **similarly situated individuals.** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.:  3:11-cv-507-REP |
| | ) | |
| **v.** | ) | Judge:  The Honorable Robert E. Payne |
| | ) | |
| **INTERSTATE BRANDS CORPORATION,** | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VERIFICATIONS INCORPORATED,** | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| _____ | ) | |

**INTERSTATE BRAND CORPORATION'S**
**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION**
**TO VERIFICATIONS INC.'S MOTION TO DISMISS CROSS-COMPLAINT**

Defendant and Third-Party Plaintiff Interstate Brands Corporation ("IBC") hereby

opposes Third-Party Defendant Verification Inc.'s ("VI") Motion to Dismiss IBC's Cross-

Complaint.  (D.E. 18).  IBC has pled with particularity its claims relating to VI's failure to

consider a seven year old public record that clearly establishes that Plaintiff Tyrone Henderson

("Henderson") did not commit the Pennsylvania criminal offenses VI erroneously listed on

Henderson's background report.  VI's erroneous background investigation and reinvestigation

contravened both federal and state law, as well as VI's contractual obligations to IBC.  As

discussed herein, these facts give rise to IBC's claims, which have been pled with particularity and are not subject to dismissal.[1]

## INTRODUCTION

As an initial matter, this Court must either exclude "Exhibit A" attached to VI's memorandum in support of its motion, or convert VI's motion into one for summary judgment governed by Federal Rule of Civil Procedure 56.  Federal Rule of Civil Procedure 12(d) is clear: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion *must* be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d) (emphasis added).  This conversion in turn, mandates that IBC be provided with "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

VI's argument that its exhibit is "pertinent" to VI's complaint is irrelevant, and VI's citation to *Gasner v. County of Dinwiddie*, 162 F.R.D 280 (E.D. Va. 1995), is inapposite.  *See* VI's Mem. Supp. Mot. Dismiss Cross-Compl. of IBC at 3 n.1 (D.E. 19).  Although the court in *Gassner* permitted a defendant to attach to its motion to dismiss a "pertinent" document that was referenced in, but not attached to, a complaint, it did so only to allow the court to test "the legal sufficiency of" the complaint.  *Gasner*, 162 F.R.D at 282.

VI does not, however, offer this exhibit for the reasons sanctioned by *Gasner*.  VI's Exhibit A, which purports to be a copy of the User Certification and Client Services Agreement entered into between IBC and VI,[2] has nothing to do with VI's legal challenges to IBC's Cross-Complaint.  VI, in fact, has affirmatively conceded that IBC's breach of contract claim is

---

[1]  VI has admitted that the contract between IBC and VI existed and was valid.  *See* VI's Answer to Cross-Compl. of IBC at ¶¶ 14-15 (D.E. 20).  Accordingly, IBC voluntarily dismisses this claim without prejudice.  Similarly, IBC voluntarily dismisses its claim for violation of 15 U.S.C. § 1681e without prejudice.

[2]  VI's impermissible attempt to introduce this exhibit should be rejected for the independent reason that VI has done nothing to demonstrate its authenticity.  *See Gassner*, 162 F.R.D. at 282 ("There is but one limitation: the document must be one of unquestioned authenticity.").

properly before this Court.[3]   VI, instead, cites this agreement in an attempt to support the legally

untenable argument that the existence of the contract somehow negates VI's non-contractual

duties.[4]   Virginia courts have already rejected similar arguments.   *See generally  Richmond

Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998) ("We have

acknowledged that a party can, in certain circumstances, show both a breach of contract and a

tortious breach of duty."); *see also* Argument Sections II.B, V.  This Court must therefore either

exclude Exhibit A or convert VI's motion in to one for summary judgment, affording IBC "a

reasonable opportunity to present all the material that is pertinent."  Fed. R. Civ. P. 12(d).

## STANDARD OF REVIEW

In the event that this Court refrains from converting VI's motion into one for summary

judgment, IBC notes that VI has erroneously characterized its motion as one to dismiss IBC's

Cross-Complaint under Federal Rule of Civil Procedure 12(b)(6).  Because VI filed its answer

and its motion to dismiss simultaneously, VI "should have filed the motion under Rule 12(c) as

one for judgment on the pleadings."  *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) (citation

omitted).  VI's error, however, does not change the standard of review, as a motion under Rule

12(c) is assessed under the same standard that applies to a Rule 12(b)(6) motion.  *Id.*

To survive VI's motion, the facts alleged by IBC "must be enough to raise a right to relief

above the speculative level and must provide enough facts to state a claim to relief that is

plausible on its face."  *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011) (citation and

internal quotation marks omitted).  "Nevertheless, a complaint need only give the defendant fair

---

[3]   *See, e.g.*, VI's Mem. Supp. Mot. Dismiss Cross-Compl. of IBC at 16 (D.E. 19) ("The dispute between IBC and Verifications is . . . a claim for breach of contract. . . . *That is the issue . . . to be resolved.*") (emphasis added); *id.* ("The court should . . . *move forward with the breach of contract claim.*") (emphasis added); *see also* VI's Mot. Dismiss Cross-Compl. of IBC at 1 (D.E. 18) (requesting that this Court dismiss only "Counts Two through Nine of the Cross-Complaint.").

[4]   *See e.g.*, VI's Mem. Supp. Mot. Dismiss Cross-Compl. of IBC at 9 (D.E. 19) (citing Ex. A for the argument that "any duty owed by Verifications to IBC arises solely from the contractual relationship between the parties"); *id*. at 12 (same).

notice of what the claim is and the grounds upon which it rests," and this Court must "draw all reasonable inferences in favor of" IBC. *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citation and internal quotation marks omitted). "The Fourth Circuit has held that a motion to dismiss under Rule 12(b)(6) should be granted only in 'very limited circumstances.'" *Banner Life Ins. Co. v. Bonney*, No. 2:11cv198, 2011 WL 5027498, at *7 (E.D. Va. Oct. 21, 2011) (quoting *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989)).

## ARGUMENT

### I. Virginia Law Recognizes A Claim For Breach Of An Implied Contractual Term Independent Of Any Breach Of An Express Contractual Term

VI's argument that IBC's claim for breach of an implied term of the contract should be dismissed has no merit. A "[m]aterial breach of contract occurs when a party fails to do something which it is bound to do according to the contract," *Pa. Life Ins. Co. v. Bumbrey*, 665 F. Supp. 1190, 1195 (E.D. Va. 1987) (citing *R.G. Pope Constr. Co. v. Guard Rail of Roanoke, Inc.*, 244 S.E.2d 774 (1978)), and, "[u]nder Virginia law, *every* contract contains an implied covenant of good faith and fair dealing in the performance of the agreement." *Id.* (citations omitted) (emphasis added). It follows that "bad faith . . . may constitute breach of contract." *Id.* (citing *A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 676-78 (4th Cir. 1986)). Because Virginia law recognizes the viability of claims for this breach of an implied contractual provision, this Court should deny VI's motion to dismiss.

Moreover, VI's reliance on *Frank Brunckhorst Co., L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 462 (E.D. Va. 2008), is misplaced. In *Frank Brunckhorst Co.*, the court rejected the plaintiff's assertions that there existed "an *independent* legal duty of fair dealing" based on representations "*outside* the scope of the contract" that could suffice to prove a claim for

*constructive fraud*. *Id.* at 462 (emphasis added). In this count, IBC seeks to prove that VI breached an implied term of the contract, not an independent duty outside its scope.

Similarly, in *L&E Corp. v. Days Inns of Am., Inc.*, the court rejected the proposition that a contractual agreement *was created* by the implied covenant of good faith and fair dealing, and explicitly identified caselaw describing an implied duty "among '*contracting* parties . . . in the *performance* of [an existing] agreement.'" 992 F.2d 55, 59 (4th Cir. 1993) (quoting *A&E Supply Co.*, 798 F.2d at 676) (emphasis in original). Here, VI concedes the existence of a contract, *see* VI's Answer to Cross-Compl. of IBC at ¶¶ 14-15 (D.E. 20), and IBC does not rely on an implied covenant of good faith and fair dealing to establish its existence. Rather, IBC seeks to enforce an implied term of the contract, which is a claim cognizable under Virginia law.[5]

VI cannot demonstrate that this claim fails as a matter of law; therefore, this Court should deny VI's motion to dismiss Claim Two for breach of an implied contractual provision.

## II. IBC's Claims For Constructive Fraud And Fraud In The Inducement Are Properly Before This Court

VI's arguments in support of its motion to dismiss IBC's claims sounding in fraud are equally lacking in merit. In support of its Motion to Dismiss, VI argues that (1) the false statements of material fact alleged by IBC amount only to unfulfilled promises and opinions that its background check services "might" be accurate and in compliance with the FCRA; (2) IBC's claims are barred by the economic loss doctrine; and (3) IBC failed to comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Not one of these grounds warrants dismissal of IBC's claims for constructive fraud and for fraudulent inducement.

---

[5] The only case that supports VI's assertion is a Report and Recommendation offered by a United States Magistrate Judge that was never adopted by an Article III court. *See Healy v. Chesapeake Appalachia*, LLC, No. 1:10-cv-00023, 2011 WL 24261, at *16 (W.D. Va. Jan. 5, 2011). This case is not controlling or otherwise binding in the Eastern District of Virginia.

**A.    VI Has A History Of Failed Background Investigations Relating To Criminal Convictions, And Now Seeks To Avoid Liability For Its Misrepresentations Regarding The Accuracy Of Its Procedures**

IBC clearly alleged statements of material fact that were false when made by VI and that extended well beyond mere advertising puffery.  VI's litigation history demonstrates that it was fully aware of the flaws in its background check system and processes when it represented to IBC that it would comply with all FCRA requirements, conduct its background check services accurately, and provide avenues through which errors could be promptly corrected.[6]  In late 2001—approximately two years before IBC contracted with VI—VI was sued for libel and for intentional slander/defamation for producing an allegedly erroneous written report that the plaintiff was a convicted felon and subsequently failing to correct the mistake once it was brought to VI's attention.  *See* Def.'s Notice of Removal at 5-9, *Summers v. Verifications Inc.*, No. 4:02-cv-00107-RH (N.D. Fla. Mar. 20, 2002) (Ex. A).  The allegations are nearly identical to the facts underlying the instant matter.  In 2004, VI was sued again for producing a background report with allegedly erroneous information.  *See* Compl. at 2, *Hill v. Verifications, Inc.*, No. 0:04-cv-04873-JNE-SRN (D. Minn. Nov. 24, 2004) (Ex. B).  And in 2007—a mere two years before IBC and VI extended their contractual agreement—once more a consumer sued VI alleging that VI had falsely attributed the criminal history of another individual to the plaintiff. *See* Compl. at 3, *Adams v. Nat'l Eng'g Serv. Corp., et. al*, No. 3:07-cv-01035 (D. Conn. Jul. 6, 2007) (Ex. C).  This string of litigation put VI on actual and constructive notice of the patent deficiencies in its systems, and offers a context for VI's actionable misrepresentations to IBC

---

[6]  IBC recognizes that "a court may take judicial notice of a document filed in another court . . . to establish the fact of such litigation and related filings, [but] a court cannot take judicial notice of the factual findings of another court." *Taylor v. Charter Med. Corp.* 162 F.3d 827, 830 (5th Cir. 1998) (cited in *Hughes v. Freightliner, LLC*, 2006 WL 1842997, at *1 (W.D. Va. Jun. 29, 2006)).  As discussed above, this Court should treat VI's motion to dismiss as a motion for summary judgment under Federal Rule of Civil Procedure 56, thus permitting IBC to make a proffer similar to that of VI's attached "Exhibit A."  Should this Court disagree, IBC offers these attachments not to prove any factual findings from other jurisdictions, but to demonstrate that the existence of such litigation put VI on notice about the deficiencies in its processes.

regarding its accuracy and compliance.   VI's current argument that its representations were "unfulfilled promises" regarding "future events," or "opinions about how [its] product might work," VI's Mem. Supp. Mot. Dismiss Cross-Compl. of IBC at 8-9 (D.E. 19) (citations omitted), fails to account for the alleged systemic deficiencies in its procedures from which IBC is entitled to discover and litigate since it relied on VI to its legal detriment.

On this point, the Virginia Supreme Court's decision in *Packard Norfolk Inc. v. Miller*, 95 S.E.2d 207 (Va. 1956), is instructive.  There, a plaintiff agreed to purchase a car upon assurances that the "car would be in perfect condition, . . . thoroughly checked . . . gone over carefully, . . . [and] in as good running condition as it could be when it was delivered to" the buyer.  *Id*. at 209 (alterations in original).  When the car proved woefully deficient, the buyer returned the car, demanded a refund, *see id*. at 209-10, and sued, alleging that "he had been induced to purchase a new . . . automobile under false, fraudulent and material representations." *Id*. at 208.  In response, the defendant asserted that the representations "were expressions of opinion promissory in nature, and were not statements as to an existing fact and were not material."  *Id.* at 211.

The court rejected this argument, stating "it is clear that the representation was intended to be understood as a statement of an existing fact that would continue to exist when the car was delivered, and was not a mere opinion as to the car's quality or a promise of what would be performed in the future."  *Id*.  In doing so, the court also explicitly rejected the defendant's argument that its assurances as to the car's condition failed to give rise to a fraud claim because (1) it was "specifically excluded by the sales contract," (2) it was "a mere warranty," and (3) it purported "to cover the identical subject provided for in the express warranty."  *Id*. at 212.

VI's assurances as to the accuracy, quality, and compliance of its background check services were similarly "representation[s] as to the present quality or character of" its services, and were "clearly . . . representation[s] of fact and not . . . promise[s] as to something to be done in the future." *Id*. at 211.  VI's checkered litigation history demonstrates its awareness that the representations it made with regard to the accuracy of its background check services were not true.  *See id*. at 213  ("The car, when delivered, was not in perfect condition, did not run smoothly, and *this the salesman knew*. . . .  It follows that the complainant would be entitled to relief . . . .").  Accordingly, VI has failed to demonstrate entitlement to a dismissal on grounds that its false representations amounted only to unfulfilled promises and misguided opinions.

### B.    VI Misstates And Misapplies The Economic Loss Doctrine Which Clearly Establishes The Validity Of IBC's Claims For Constructive Fraud And Fraud In The Inducement

The economic loss doctrine does not bar IBC's claims sounding in fraud, and VI's assertion that IBC is seeking "purely economic losses" is specious at best.  VI's Mem. Supp. Mot. Dismiss Cross-Compl. of IBC at 9 (D.E. 19) (citations omitted).  This is true for a host of reasons.

*First*, although it is true that "[i]n determining whether the economic loss doctrine precludes an action in tort, the Court must look to the source of the duty violated," *Risal v. SCI Va. Funeral Serv., Inc.*, No. CL–2009–18167, 2010 WL 7765592, at *1 (Va. Cir. Ct. 2010) (citing *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998)), as demonstrated above, *supra* Argument Section II.A, VI was well aware of the deficiencies in its background check systems *before* it entered into a contract with IBC.  When "[t]he fraud alleged . . . [is] perpetrated . . . *before* a contract between the two parties [comes] into existence, . . . it cannot logically follow that the duty . . . allegedly breached was one that finds its source in the [c]ontract[]." *Abi-Najm v. Concord Condo., LLC*, 699 S.E.2d 483, 490 (Va.

2010) (emphasis in original); *see also Kaltman v. All Am. Pest Control, Inc.*, 706 S.E.2d 864, 870 (Va. 2011) (same). VI's claim that any duties owed to IBC arose solely by contract, therefore, fails as a matter of common sense.

**Second**, it is well established that "a single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and for breach of a duty arising in tort, thus permitting a plaintiff to recover both for the loss suffered as a result of the breach and traditional tort damages." *Kaltman*, 706 S.E.2d at 869 (citations omitted). In determining whether a duty of care exists, courts of Virginia consider "factors including foreseeability of harm, the likelihood of injury, the magnitude of the burden of guarding against that injury, and the consequences of placing such a burden on the defendant." *Jappell v. Am. Ass'n of Blood Banks*, 162 F. Supp. 2d 476, 480 (E.D. Va. 2001) (citing *Gulf Reston, Inc. v. Rogers*, 207 S.E.2d 841, 845 (Va. 1974)). Every one of these considerations counsels in favor of imposing a common law duty of care upon VI: (1) it is abundantly foreseeable, as evidenced by this litigation and the others like it, that VI's failure to conduct background checks accurately could lead to FCRA liability for its clients; (2) it is abundantly likely, given the FCRA's statutory and punitive penalty provisions, that VI's failure to conduct its background checks accurately could harm its clients; (3) the burden of guarding against such injuries is minimal, as evidenced by the readily available Pennsylvania public records proving VI's egregious factual error on Henderson's background report; and (4) the consequences of placing this duty of care upon VI are virtually non-existent, as evidenced by the fact that VI is already under a statutory duty to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C.A. § 1681e(b).

***Third***, beyond the traditional common law duty to act reasonably to prevent harm to foreseeable plaintiffs, the Virginia Supreme Court has consistently "cited with approval the legal principle that '[i]t is ancient learning that one who assumes to act . . . , may thereby become subject to the duty of acting carefully, if he acts at all.'"  *Didato v. Strehler*, 554 S.E.2d 42, 48 (Va. 2001) (citations omitted); *Khadim v. Lab. Corp. of Am.*, No. 3:11–CV–00019, 2011 WL 5403151, at *8 (W.D. Va. Nov. 7, 2011).  ("*Didato* underscores that the 'negligent undertaking' theory is well-established in Virginia.").  This principle is "embodied in the Restatement (Second) of Torts § 323":

> One who undertakes, gratuitously *or for consideration*, to render services to another which he should recognize as necessary for the protection of the other's person *or things*, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

*Didato*, 554 S.E.2d at 48 (quoting Restatement (Second) of Torts § 323) (internal quotations marks omitted) (emphases added).  "This duty," of course, "is separate from any contractual duties due" by VI to IBC.  *Boland v. Rivanna Partners L.L.C.*, No. 05-32, 2005 WL 3105359, at *3 (Va. Cir. Ct. 2005).

Here, VI's duty to act carefully, independent of its contractual duties, eviscerates its argument that the economic loss doctrine limits IBC's claims to breach of contract.  *See* VI's Answer to Cross-Compl. of IBC at ¶¶ 14-15 (D.E. 20).  "For consideration," VI has agreed "to render services" to IBC for all aspects of the adverse employment action process.  Based on the potential for FCRA statutory and punitive liability inherent in the adverse employment action process, VI knows that full accuracy and compliance with all federal and state laws is "necessary for the protection" of IBC's interests.  *Didato*, 554 S.E.2d at 48 (quoting Restatement (Second) of Torts § 323).  VI's failure to exercise reasonable care has unequivocally "increase[d] the risk"

of harm to IBC in the form of FCRA liability, due to IBC's "reliance upon [VI's] undertaking." *Id*. In this context, VI cannot credibly dispute that it became "subject to the duty of acting carefully." *Id*. This duty, which the law recognizes exists entirely independent of VI's contractual duty to IBC, defeats VI's argument that the economic loss doctrine limits IBC's claims to those sounding in contract.

   **Finally**, VI's claim that the damages sought by IBC are "purely economic" is belied by "[o]ther decisions applying the economic loss doctrine" that "focus more on the damages claimed than the source of the duty":

> The controlling policy consideration underlying tort law is the safety of persons and property—the protection of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for. If that distinction is kept in mind, the damages claimed in a particular case may more readily be classified between claims for injuries to persons or property on one hand and economic losses on the other.

*Risal*, 2010 WL 7765592, at *1-2 (quoting *Sensenbrenner*, 374 S.E.2d at 58). "The principle behind the economic loss rule is the concept that 'contract damages be limited to those within the contemplation and control of the parties in framing their agreement.'" *Arias v. Jokers Wild, Inc.*, No. CL 2005–2513, 2007 WL 6013198, at *14 (Va. Cir. Ct. 2007) (quoting *City of Richmond v. Madison Mgt. Group*, 918 F.2d 438 (4th Cir. 1990)).

   The damages alleged by IBC against VI are not "purely economic," as that term has been construed by Virginia Courts. *See, e.g.*, *Sensenbrenner*, 374 S.E.2d at 58 (describing pure economic loss as diminution in value of the contracted for item due to faulty construction); *Blake Constr. Co., Inc. v. Alley*, 353 S.E.2d 724, 726 (Va. 1987) (describing pure economic loss as deterioration or loss of quality); *see also Cincinnati Ins. Co. v. Farrington*, No. 09–125, 2010 WL 7765125, at *6 n.4 (Va. Cir. Ct. 2010). Calculation of purely economic damages, such as

those resulting from a breach of duties assumed only by agreement, necessitates only an "analysis of the damages which were within the contemplation of the parties when framing their agreement." *Sensenbrenner*, 374 S.E.2d at 58.

IBC, however, is alleging damages that far exceed those within the contemplation of the agreement between IBC and VI.  IBC does not seek solely to recover the damages in the diminution of the services that it purchased from VI; rather, IBC is seeking to recover for the potentially exorbitant putative FCRA class liability that stems entirely from VI's failure to perform its background checks accurately and in compliance with federal law.  Each individual violation of the FCRA has the potential of exposing IBC to between $100 and $1,000 in statutory damages, *see* 15 U.S.C. § 1681n(a)(1)(A), and it is impossible to estimate how much more IBC could potentially face in punitive damage liability.  *See* 15 U.S.C. § 1681n(a)(2).  VI's suggestion that IBC seeks only to recover the damages "within the contemplation of the parties when framing their agreement" is absurd, especially where, as here, IBC not did not get the benefit of the bargained for exchange.  *Sensenbrenner*, 374 S.E.2d at 58.

### C.    IBC Has Satisfied Federal Rule Of Civil Procedure 9(b)'s Heightened Pleading Requirement

IBC has pled its claims sounding in fraud with sufficient particularity to survive VI's motion to dismiss.  The heightened pleading requirement of Federal Rule of Civil Procedure 9(b) serves four purposes:  (1) ensuring "that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of";  (2) protecting "defendants from frivolous suits"; (3) eliminating "fraud actions in which all the facts are learned after discovery"; and (4) protecting "defendants from harm to their goodwill and reputation."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)  "'A court should hesitate to dismiss a complaint under Rule 9(b)' if the complaint puts the defendants on notice of the

fraud claims against them and the plaintiffs seem to have 'substantial prediscovery evidence' supporting those claims." *First Mount Vernon Indus. Loan Ass'n v. Smith*, No. 8-08-cv-02085-AW, 2009 WL 2392132, at *5 (D. Md. July 31, 2009) (quoting *Harrison*, 176 F.3d at 783).

Here, not one of the purposes behind Rule 9(b)'s heightened pleading requirement counsels in favor of dismissing IBC's fraud claims.  IBC's allegations that VI misrepresented the accuracy and compliance of its processes provides VI with all the information it needs to formulate its defense.  VI's unquestionably erroneous background check of Henderson, when combined with VI's checkered litigation history pertaining to the accuracy and compliance of its services, eliminates any argument that IBC's claims for constructive fraud and fraud in the inducement are frivolous.  Moreover, IBC has substantial pre-discovery evidence, *i.e.*, certified court records from Westmoreland County, Pennsylvania, clearly establishing that Henderson's VI background investigation was inexcusably inaccurate.  Prior to VI's filing of its motion to dismiss, IBC shared this evidence with VI as part of IBC's Rule 26(a)(1) initial disclosures, thus defeating any argument that all the facts supporting these claims would be established after discovery.  Finally, any concern about protecting VI's goodwill and reputation must give way IBC's right to an opportunity to prove up its claims.[7]

Based on the foregoing, this Court should deny VI's Motion to Dismiss IBC's claims for constructive fraud and fraud in the inducement.

## III.   VI Impermissibly Seeks To Limit The Implied Warranty To Perform In A Workmanlike Manner

VI's arguments in support of its motion to dismiss IBC's claim for failure to perform in a workmanlike manner lack merit.  While the implied warranty to perform in a workmanlike manner appears most often in the context of construction contracts, Virginia courts have not

---

[7] Should this Court disagree and find that IBC has not pled its allegations of constructive fraud and fraud in the inducement with sufficient particularity, IBC respectfully seeks leave of Court to amend its Cross-Complaint and is prepared to submit any additional pleading consistent with this request.

limited this warranty in the way VI represents:  "'[A]s a general rule, there is implied in *every contract for work and services* a duty to perform it skillfully, carefully, diligently, and in a workmanlike manner.'"  *Filbert v. Joel Stowe Assocs., Inc.*, No. 95-351, 1995 WL 1055748, at *2 (Va. Cir. Ct. 1995) (quoting 17 Am. Jur. 2d, Contracts, Section 627) (emphasis added).  Thus, "[f]ailure to comply with this implied duty to perform in a skillful and workmanlike manner may not only defeat recovery [under the contract] but may entitle the other party to damages resulting from the unskillful and unworkmanlike performance.'"  *Id.*  (quoting 17 Am. Jur. 2d, Contracts, Section 627) (emphasis added) (alteration in original); *see also Colodny v. Wines Constr., Inc.*, No. 93-62, 1994 WL 1031115 (Va. Cir. Ct. 1994) (same); *Bedwell v. Poe & Wallenfelsz*, No. 91-139, 1991 WL 835324 (Va. Cir. Ct. 1991) (same); *see generally Johnson v. Capital Area Permanente Grp.*, No. 113046, 1993 WL 945935, at *3 (Va. Cir. Ct. 1993) ("The common law recognizes implied warranties regarding personal services.").

The Virginia Supreme Court has recognized such implied warranties in *all* service contracts for over sixty years:  "'Ordinarily a person undertaking a particular work impliedly agrees to exercise a degree of skill equal to the undertaking.'"  *Mann v. Clowser*, 59 S.E.2d 78, 84 (Va. 1950) (quoting 17 C.J.S., Contracts, sec. 329, p. 781).  In other words, if "'a person holds himself out as *specially qualified* to perform work of a particular character, there is an implied warranty that the work which he undertakes shall be of proper workmanship and reasonable fitness for its intended use.'"  *Id.*  (quoting 17 C.J.S., Contracts, sec. 329, p. 781) (emphasis added); *see also Filbert*, 1995 WL 1055748, at *2 ("In Virginia a party may be held liable for his negligent performance of his contractual obligations.") (citing *Miller v. Quarles*, 410 S.E.2d 639 (Va. 1991); *Bedwell*, 1991 WL 835324, at *1 (same).  Consistent with this broad imposition of implied warranties, forty years ago, the Virginia Supreme Court permitted a

plaintiff to prosecute a claim premised on an "implied warranty" that her car was manufactured using "sound material and in a good workmanship manner and was reasonably fit for the purpose for which it was designed." *Caudill v. Wise Rambler, Inc.*, 168 S.E.2d 257, 258 (Va. 1969); *see also Bluefield Armature Co. v. R. G. Pope Constr. Co.*, 548 F.2d 484, 485 (4th Cir. 1976) (noting, in a case addressing a faulty electric motor, the district court's observation that "there's no question but what they've implied warranty that the work which the Plaintiff undertook to perform would be performed in a skillful and workmanlike manner"); *cf. Greeson v. Sherman*, 265 F. Supp. 340, 343 (D. Va. 1967) (implying the existence of a contract between plaintiffs and hospital and physician defendants based on defendants' "duties [to] render their services in a workmanlike manner, according to an accepted standard of skill and care appropriate to physicians and hospitals of like status").

Here, it is uncontested that VI has held itself out as "specially qualified to perform work of a particular character." *Mann*, 59 S.E.2d at 84.  In its answer, VI expressly admits that it "provides certain background screening, employment drug testing, and onboarding solutions to its clients," VI's Answer to Cross-Compl. of IBC at ¶ 10 (D.E. 20)—which include 50% of the Fortune 500—that it is "strives to comply with all applicable state and federal laws, including the FCRA, *id.* at ¶ 64, and that it "is dedicated to accuracy, compliance, and customer service." *Id.* at ¶ 65.  It follows, then, that VI has "impliedly agree[d] to exercise a degree of skill equal to the undertaking." *Mann*, 59 S.E.2d at 84.  Because IBC has the evidence necessary to prove without any doubt that VI failed to satisfy its "duty to perform . . . skillfully, carefully, diligently, and in a workmanlike manner,'" IBC is "entitle[d] . . . to damages resulting from [VI's] unskillful and unworkmanlike performance.'" *Filbert*, 1995 WL 1055748, at \*2.  This Court should reject VI's attempt to seek dismissal of this claim.

**IV.     The Economic Loss Doctrine Does Not Bar IBC's Negligence Claim**

VI's argument that the economic loss doctrine bars IBC's recovery for negligence is without merit.  It is premised entirely on the erroneous assertion that "Verifications' duty to reasonably 'conduct background checks of IBC employee applicants' exists solely by virtue of its contract with IBC."  VI's Mem. Supp. Mot. Dismiss Cross-Compl. of IBC at 13 (D.E. 19).

As discussed at length above, *see supra* Argument Section II.B, VI's argument that it was under no duty to conduct its background checks reasonably contravenes established Virginia law as well as basic notions of fairness and common sense.  The factors Virginia courts weigh when deciding whether the common law imposes a duty of reasonable care counsels in favor of imposing such a duty upon VI.  *See Jappell*, 162 F. Supp. 2d at 480 (citing *Gulf Reston, Inc.*, 207 S.E.2d at 845); *see also supra* Argument Section II.B.  Further, VI contractually assumed a duty to conduct background checks for IBC, *see* VI's Answer to Cross-Compl. of IBC at ¶¶ 14-15 (D.E. 20), and "[a]s one who assumes to act," VI has "thereby become subject to the duty of acting carefully," *Didato*, 554 S.E.2d at 48 (citations omitted), "separate from any contractual duties due" by VI to IBC.  *Boland*, 2005 WL 3105359, at *3; *see supra* Argument Section II.B.  Finally, the existence of potentially exorbitant putative FCRA class liability resulting from VI's failure to perform its background checks accurately and in compliance with federal law also defeats any contention that IBC now seeks "purely economic losses" entirely within the contemplation of IBC and VI upon forming the contract.  *Sensenbrenner*, 374 S.E.2d at 58.  The economic loss doctrine does nothing to bar IBC's claim against VI for negligence, and this Court should deny VI's motion to dismiss on this ground.

**V.      Controlling Precedent Entitles IBC To Pursue Its Claim For Equitable Indemnification**

This Court should also reject VI's challenge to IBC's claim for equitable indemnification. Despite VI's string cite to a handful of federal district court cases, the Fourth Circuit has expressly held that, for claims of an FCRA violation, "[i]ndemnification is warranted in a case . . . in which the indemnitor is the 'active' or 'primary' wrongdoer and the indemnitee is the 'passive' or 'secondary' wrongdoer." *Yohay v. City of Alexandria Emps. Credit Union, Inc.*, 827 F.2d 967, 973-74 (4th Cir. 1987). VI has made no attempt to address this case, which still binds the courts of the Fourth Circuit.

In *Yohay*, an attorney on retainer with a credit union used the credit union's resources to access a consumer report of her ex-husband. *Id.* at 969. Upon discovering that his credit had been accessed, the ex-husband filed suit against the credit union for violations of the FCRA, and the credit union filed a third-party complaint against the attorney for indemnification. *Id.* Noting that "[t]he right of indemnity [rests] upon violation of a duty of care to the injured person," *Id.* at 973 (some alteration in original), the Fourth Circuit held that the attorney, as the "primary" wrongdoer, was "liable to the credit union," the "passive" wrongdoer, "for indemnification for the entire amount owed to" the ex-husband. *Id.*

*Yohay* establishes that indemnification is not, as a matter of law, barred for FCRA violations in the Fourth Circuit. Not one of VI's unpublished district court cases can supplant this fact. Because IBC has sufficiently pled that VI was the primary wrongdoer giving rise to Henderson's complaint, VI's motion to dismiss IBC's claim for equitable indemnification should be rejected.

## VI.    VI's Procedural Challenge Is Without Merit

IBC's Cross-Complaint is properly before this Court in spite of VI's procedural challenge.  Henderson sued VI in a separate putative class action based upon the same facts giving rise to IBC's Cross-Complaint, specifically, the erroneous background report VI prepared on behalf of IBC.  *See* Class Compl. at 4, *Henderson v. Verifications, Inc.*, No. 3:11cv514-REP (E.D. Va. Aug. 10, 2011) (Ex. D).  VI answered that complaint on September 22, 2011.  *See* VI's Answer to Class Compl. of Tyrone Henderson, *Henderson v. Verifications, Inc.*, No. 3:11cv514-REP (E.D. Va. Sept. 22, 2011) (Ex. E).  IBC filed its Cross-Complaint against VI within the time-frame established by this Court's scheduling order.  Scheduling Order at 1 (D.E. 8).  On October 27, 2011, the parties participated, at the direction of this Court, in a combined pretrial conference.  There, this Court ordered that Henderson's suit against IBC be consolidated with his suit against VI for purposes of discovery.  In this context, VI now claims that the Cross-Complaint is not properly before this Court.  Respectfully, this is not a serious argument.

VI has not alleged that it has suffered any prejudice by the filing of IBC's Cross-Complaint, and cannot otherwise demonstrate that it has suffered any harm.  As discussed above, VI concedes that at least one of IBC's claims is properly before this Court, stating that "[t]he court should . . . *move forward* with the breach of contract claim."  VI's Mem. Supp. Mot. Dismiss Cross-Compl. of IBC at 16 (D.E. 19) (emphasis added); *see also* VI's Mot. Dismiss Cross-Compl. of IBC at 1 (D.E. 18) (requesting that this Court dismiss only "Counts Two through Nine of the Cross-Complaint.").  Moreover, VI simultaneously filed an answer to each claim in IBC's Cross-Complaint, which further underscores the absence of prejudice or inconvenience to VI.

Finally, judicial efficiency favors permitting IBC's Cross-Complaint to stand.  VI failed to perform an accurate background check and entirely ignored Pennsylvania court records

Case 3:11-cv-00507-REP   Document 23   Filed 11/21/11   Page 19 of 21 PageID# 191

referencing the criminal records of a different Tyrone Henderson.  These underlying facts form the predicate for both Henderson's putative class action and IBC's Cross-Complaint.  VI is thus properly before this Court in both actions, which have already been consolidated for purposes of discovery.

## <u>CONCLUSION</u>

IBC moves to voluntarily dismiss without prejudice its claims for unjust enrichment and for violation of 15 U.S.C. § 1681e.  For the foregoing reasons, this Court should deny VI's motion to dismiss as to all other claims pled by IBC.

- 19 -

Dated:  November 21, 2011                          _____/s/ Joseph W. Clark_____
                                                   Virginia State Bar No. 42664
                                                   JONES DAY
                                                   51 Louisiana Avenue, N.W.
                                                   Washington, DC  20001-2113
                                                   Telephone:  (202) 879-3939
                                                   Facsimile:  (202) 626-1700
                                                   Email:  jwclark@jonesday.com

                                                   Edward M. Wenger (admitted *pro hace vice*)
                                                   JONES DAY
                                                   51 Louisiana Avenue, N.W.
                                                   Washington, DC  20001-2113
                                                   Telephone:  (202) 879-3939
                                                   Facsimile:  (202) 626-1700
                                                   Email:  emwenger@jonesday.com

                                                   Attorneys for Defendant / Third-Party Plaintiff
                                                   INTERSTATE BRANDS CORPORATION

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed with the Court via the CM/ECF system.  The foregoing

was served this 21 day of November, 2011, on the following filing users by the CM/ECF system:


Dale Pittman
The Law Office of Dale W. Pittman, P.C.
112-A W Tabb St.
Petersburg, VA 23803-3212
dale@pittmanlawoffice.com

Leonard A Bennett
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, VA 23606
lenbennett@clalegal.com

Attorneys for Plaintiff
TYRONE HENDERSON

Charles K. Seyfarth
LeClairRyan
951 East Byrd Street, Eighth Floor
Richmond, VA, 23219
charles.seyfarth@leclairryan.com

Megan Starace Ben'Ary
LeClairRyan
2318 Mill Road, Suite 1100
Alexandria, VA, 22314
megan.benary@leclairryan.com

Attorneys for Third-Party Defendant
VERIFICATIONS INC.


_____/s/ Joseph W. Clark_____
Virginia State Bar No. 42664
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700
Email:  jwclark@jonesday.com

Edward M. Wenger (admitted *pro hace vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001-2113
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700
Email:  emwenger@jonesday.com

Attorneys for Defendant / Third-Party Plaintiff
INTERSTATE BRANDS CORPORATION