# EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DEBORAH ADAMS, ) | | CIVIL ACTION NO. |
|     Plaintiff ) | | |
| ) | | |
| V. ) | | |
| ) | | |
| NATIONAL ENGINEERING ) | | |
| SERVICE CORPORATION and ) | | |
| VERIFICATIONS INC. ) | | |
|     Defendants ) | | JULY 6, 2007 |

## COMPLAINT

**INTRODUCTION**

1. This is an action seeking compensatory and punitive damages, attorneys fees and costs, and other relief available in law or in equity resulting from Defendants' failure to comply with the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* This is further an action alleging violation of common law of the State of Connecticut.

**PARTIES**

2. Plaintiff, Ms. Deborah Adams, is a citizen of the State of Connecticut. She lives at 160 Newington Road, B106, P.O. Box 270101, West Hartford, Connecticut 06127.

3. Defendant National Engineering Service Corporation (hereinafter "NESC") is a national contract / temporary placement staffing company which also functions as a consumer reporting agency in that it regularly evaluates, assembles, and provides background information to third party employers for fee. Defendant NESC is a consumer reporting agency under the FCRA. The Defendant NESC is located at 72 Mirona Road, Suite 4, Portsmouth New Hampshire 03801.

1

4. Defendant Verifications Inc (hereinafter "Verifications") is a national employee background check/employment screening company which also functions as a consumer reporting agency which routinely conducts employment background investigations for a fee. Defendant Verifications is a consumer reporting agency under the FCRA. The Defendant Verifications is located at 6900 Wedgwood Rd. N. Suite 120, Minneapolis Minnesota 55311.

## JURISDICTION

5. The United States District Court has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because it raises questions under Federal law. Supplemental jurisdiction over the State law claims asserted herein is conferred under 28 U.S.C. § 1367.

## FACTUAL BACKGROUND

6. In March 2007, while employed at C.B. Richard Ellis ("CBRE") as a Contract Administrator, NESC contacted Plaintiff concerning a similar position at Northeast Utilities ("NU"). After Ms. Adams expressed positive interest in the position, NESC set up an interview with NU.

7. The position at NU could have been extended to a maximum of three years and/or lead to permanent placement.

8. On or about April 25, 2007, NESC employee Larry O'Keefe offered the Contract Assistant position with NU to Plaintiff. The terms of employment offered to Plaintiff were: (1) a 50 week contractual assignment to be performed at Northeast Utilities 107 Seldon Street Berlin CT 06037 (through NESC as the employment agency); (2) a fulltime weekly position of at least 40 hours; (3) an hourly pay rate of $ 21.00 per hour (with an hourly overtime rate of $ 31.50); and (4) a start date of May 14, 2007.

2

9. NESC informed Plaintiff at the time that the commencement of her employment was contingent upon completion of an employment packet, (which included an authorization for a background and drug screening to be performed by NESC & Verifications.).

10. Plaintiff accepted the offer of employment, and proceeded to complete the documents sent to her by NESC.

11. On May 2, 2007 the Plaintiff signed a document authorizing Defendants NESC and Verifications to investigate her background to confirm her eligibility for employment. At that time, Plaintiff provided the correct spelling of her name, her correct social security number, and her correct address in Connecticut.

12. Subsequent to accepting the employment offer extended by NESC, Plaintiff tendered a standard two-week resignation notice to her previous employer CBRE, in order to comply with the May 14, 2007 start date with NU.

13. On or before May 8, 2007, unknown to Plaintiff, Defendant Verifications published a report to Defendant NESC which falsely claimed that Plaintiff had previously been convicted of crimes in Virginia.

14. Neither Defendant Verifications, nor Defendant NESC, informed Plaintiff of the findings of the initial report at that time.

15. As a result of its failure to follow reasonable procedures, the report provided by Defendant Verifications falsely attributed the criminal history of another individual to Plaintiff, despite the fact that: (a) the other individual's name was spelled differently than Plaintiff; (b) the other individual's social security number was different than Plaintiff; and (c) the other individual lived in a different location than Plaintiff.

16. On May 8, 2007, Plaintiff called the NESC office to inquire about the status of her employment.

17. At that time, NESC Accounts Manager Chris O'Sullivan informed Plaintiff for the first time that "something had shown up on [her] background check".

18. Plaintiff immediately informed Mr. O'Sullivan that the company performing the background check should pay particular attention to her social security number and proper spelling of first name because a similar error had occurred in April 2006 during a previous background check.

19. Mr. O'Sullivan misrepresented to Plaintiff at that time that the background check was done using her social security number.

20. As result of this conversation, Plaintiff faxed to Defendant NESC the results of a similar background check from 2006 which shows that there is a "Debra Jean" Adams from Pittsylvania, Virginia with the same date of birth who has a criminal record. Plaintiff reiterated that Defendants NESC and Verifications should check the social security number, proper spelling of her name, and address she provided to them in connection with her employment materials.

21. After receiving the materials submitted by Plaintiff concerning the previous inaccurate background check, O'Sullivan told Plaintiff, "Don't worry about this, you should be all set."

22. Even though Plaintiff disputed the contents of the report, and explained to O'Sullivan that the criminal history of another person with a similar name and the same birth date was previously misattributed to her, O'Sullivan continued to post a "complete adverse

4

report" on Plaintiff based on the inaccurate report prepared by Verifications, without informing her of this action.

23. Plaintiff also faxed the results of the previous inaccurate background check to Defendant Verifications. Plaintiff further explained to Verifications at that time that it should confirm the proper social security number, proper name spelling, and proper residence address that she supplied in her employment materials.

24. On May 10, 2007, Defendant Verifications provided a revised report concerning Plaintiff to Defendant NESC.

25. On May 11, 2007, Plaintiff once again contacted NESC to ascertain the status of her employment. Plaintiff repeated to Mr. O'Sullivan of Defendant NESC that May 11, 2007, was her last day of employment with her previous employer.

26. Mr. O'Sullivan told Plaintiff that he would "check it out with Verifications."

27. At no time on or before May 11, 2007 did Mr. O'Sullivan instruct Plaintiff that she should rescind her resignation from her previous employer because the position at NU had been offered to another applicant as a result of the inaccurate background check provided by Defendants NESC and Verifications.

28. Accordingly, Plaintiff's employment with her previous employer ended on May 11, 2007.

29. On May 14, 2007, Mr. O'Sullivan of Defendant NESC informed Plaintiff for the first time that (a) Defendant Verifications initially performed her background check using only name and date of birth; (b) currently "we are in a holding pattern" with respect to the employment position at NU; (3) on May 8, 2007, a "completely adverse report" was filed with

5

the employer as a result of the initial false report from Defendant Verifications; and (4) as a result of the "completely adverse report", the position was offered to another applicant.

30.     In a letter to Plaintiff dated May 17, 2007, Defendant Verifications admitted that the criminal history it originally attributed to Plaintiff "belongs to an individual with a different social security number."

31.     Thus, Defendants Verifications and NESC admit that no social security number match was attempted before the erroneous criminal history report was posted regarding Plaintiff - - despite the obvious discrepancies between the name and residential address of Plaintiff, and the name and residential address of the individual identified in the initial criminal report published by Defendant Verifications and Defendant NESC, and the fact that Plaintiff disputed the contents of the initial report.

32.     Moreover, at no time was Plaintiff ever notified by Verifications or NESC that the false report was being issued or posted to Comensura / NU.

33.     Additionally, at no time was Plaintiff ever contacted by Verifications or NESC to verify that the information that was posted to NU was complete and up to date.

34.     Currently Ms. Adams is unemployed and receiving no income.

35.     Plaintiff has suffered damages as a result of Defendants' conduct. For instance, Plaintiff's car was recently repossessed; she is behind in her rent and is in danger of eviction; and she is struggling to maintain basic living necessities.

36.     Additionally, Ms. Adams has suffered extreme psychological trauma because of the actions of Verifications and NESC. She is currently under the care of a medical doctor and a therapist for treatment of suicidal ideation, acute depression and anxiety secondary to the economic hardship and emotional distress of the aforementioned events.

**COUNT ONE:** **WILLFUL FAILURE TO COMPLY WITH THE REQUIREMENTS OF 15. U.S.C § 1681e(b) IN VIOLATION OF 15 U.S.C. § 1681n AS TO DEFENDANT NESC.**

37.  Based on the foregoing, with specific reference to paragraphs 6 through 36, Defendant NESC violated the Fair Credit Reporting Act (hereinafter "FCRA").

38.  Defendant NESC violated 15 U.S.C. § 1681e(b) because (1) it published inaccurate information about Plaintiff; (2) it has failed to establish that it followed reasonable procedures to assure maximum possible accuracy regarding the information it published concerning Plaintiff; (3) Plaintiff suffered injuries; and (4) Plaintiff's injuries were caused by Defendant NESC's publication of inaccurate information about her.

39.  Defendant NESC willfully failed to comply with the requirements of the FCRA in violation of 15 U.S.C. § 1681n.

40.  As a result of the aforesaid unlawful acts, Plaintiff has suffered damages including lost wages, damage to reputation, mental anguish, loss of enjoyment of life, emotional distress, humiliation, and embarrassment.

41.  As further result of the actions of the DefendantNESC, the Plaintiff has and will continue to incur attorney's fees and costs in pursuing this litigation.

**COUNT TWO:** **WILLFUL FAILURE TO COMPLY WITH THE REQUIRMENTS OF 15. U.S.C § 1681k IN VIOLATION OF 15 U.S.C. § 1681n AS TO DEFENDANT NESC.**

42.  Based on the foregoing, with specific reference to paragraphs 6 through 36, Defendant NESC violated the FCRA.

43.  The background report posted by Defendant NESC on May 8, 2007, which incorrectly stated that Plaintiff was convicted of criminal offenses in Virginia, was a consumer

7

report furnished for employment purposes that was likely to have an adverse effect on Plaintiff's ability to obtain employment.

44. Based on the forgoing facts, the Defendant NESC failed to comply with the requirements of 15 U.S.C. § 1681k in gathering and posting that employment background report because it (1) failed to notify Plaintiff at the time the report was being posted and to whom it was being reported; and (2) it failed to maintain the strictest procedures to ensure that the information being posted was complete and up to date.

45. Defendant NESC's violation of the FCRA was willful.

46. Defendant NESC intentionally and knowingly posted inaccurate information about Plaintiff after she informed it that the initial report was false, and it failed to take the necessary corrective measures to remedy actions. Further, Defendant NESC never reported to Plaintiff before May 14, 2007 that it posted the erroneous report to the employer on May 8, 2007. This failure gave Ms. Adams no option to rescind her resignation from her previous employment with C.B Ellis, thus ensuring her unemployment as a result of the erroneous report.

47. As a result of the aforesaid unlawful acts, Plaintiff has suffered damages including lost wages, damage to reputation, mental anguish, loss of enjoyment of life, emotional distress, humiliation, and embarrassment.

48. As further result of the actions of the Defendants Verifications and NESC, the Plaintiff has and will continue to incur attorney's fees and costs in pursuing this litigation.

**COUNT THREE:** **NEGLIGENT FAILURE TO COMPLY WITH THE REQUIREMENTS OF 15. U.S.C. § 1681(e)(b) IN VIOLATION OF 15 U.S.C. § 1681o AS TO DEFENDANT NESC.**

49. Based on the foregoing, with specific reference to paragraphs 6 through 36, Defendant NESC violated the Fair Credit Reporting Act (hereinafter "FCRA").

8

50. Defendant NESC violated 15 U.S.C. § 1681e(b) because (1) it published inaccurate information about Plaintiff; (2) it has failed to establish that it followed reasonable procedures to assure maximum possible accuracy; (3) Plaintiff suffered injuries; and (4) Plaintiff's injuries were caused by Defendant NESC's publication of inaccurate information about her.

51. Defendant NESC negligently failed to comply with the requirements of the FCRA in violation of 15 U.S.C. § 1681o.

52. As a result of the aforesaid unlawful acts, Plaintiff has suffered damages including lost wages, damage to reputation, mental anguish, loss of enjoyment of life, emotional distress, humiliation, and embarrassment.

53. As further result of the actions of the Defendant NESC, the Plaintiff has and will continue to incur attorney's fees and costs in pursuing this litigation.

**COUNT FOUR:** **NEGLIGENT FAILURE TO COMPLY WITH REQUIRMENTS OF 15. U.S.C § 1681k IN VIOLATION OF 15 U.S.C. § 1681o AS TO DEFENDANT NESC.**

54. Based on the foregoing, with specific reference to paragraphs 6 through 36, Defendant NESC violated the Fair Credit Reporting Act (hereinafter "FCRA").

55. The background report posted by Defendant NESC on May 8, 2007, which incorrectly stated that Plaintiff was convicted of criminal offenses in Virginia, was a consumer report furnished for employment purposes that was likely to have an adverse effect on Plaintiff's ability to obtain employment.

56. Based on the forgoing facts, the Defendant NESC failed to comply with the requirements of 15 U.S.C. § 1681k in gathering and posting that employment background report because it (1) failed to notify Plaintiff at the time the report was being posted and to whom it was

being reported; and (2) it failed to maintain the strictest procedures to ensure that the information being posted was complete and up to date.

57. Defendant NESC's violation of the FCRA was negligent.

58. Further, Defendant NESC never reported to Plaintiff that it posted the erroneous report to the employer on May 8, 2007 until May 14, 2007. This failure gave Ms. Adams no option to rescind her resignation from her previous employment with C.B Ellis, thus ensuring her unemployment as a result of the erroneous report.

59. As a result of the aforesaid unlawful acts, Plaintiff has suffered damages including lost wages, damage to reputation, mental anguish, loss of enjoyment of life, emotional distress, humiliation, and embarrassment.

60. As further result of the actions of the Defendant NESC, the Plaintiff has and will continue to incur attorney's fees and costs in pursuing this litigation.

**COUNT FIVE:** **NEGLIGENT FAILURE TO COMPLY WITH THE REQUIREMENTS OF 15. U.S.C § 1681(e)(b) IN VIOLATION OF 15 U.S.C. § 1681o AS TO DEFENDANT VERIFICATIONS.**

61. Based on the foregoing, with specific reference to paragraphs 6 through 36, Defendant Verifications violated the Fair Credit Reporting Act (hereinafter "FCRA").

62. Defendant Verifications violated 15 U.S.C. § 1681e(b) because (1) it published inaccurate information about Plaintiff; (2) it has failed to establish that it followed reasonable procedures to assure maximum possible accuracy; (3) Plaintiff suffered injuries; and (4) Plaintiff's injuries were caused by Defendant's publication of inaccurate information about her.

63. Defendant Verifications negligently failed to comply with the requirements of the FCRA in violation of 15 U.S.C. § 1681o.

64. As a result of the aforesaid unlawful acts, Plaintiff has suffered damages including lost wages, damage to reputation, mental anguish, loss of enjoyment of life, emotional distress, humiliation, and embarrassment.

65. As further result of the actions of the Defendant Verifications, the Plaintiff has and will continue to incur attorney's fees and costs in pursuing this litigation.

**COUNT SIX:** **NEGLIGENT FAILURE TO COMPLY WITH REQUIRMENTS OF 15. U.S.C § 1681k IN VIOLATION OF 15 U.S.C. § 1681o AS TO DEFENDANT VERIFICATIONS.**

66. Based on the foregoing, with specific reference to paragraphs 6 through 36, Defendant Verifications violated the FCRA.

67. The background report posted by Defendant Verifications on May 8, 2007 which incorrectly stated that Plaintiff was convicted of criminal offenses in Virginia was a consumer report furnished for employment purposes that was likely to have an adverse effect on Plaintiff's ability to obtain employment.

68. Based on the forgoing facts, the Defendant Verifications failed to comply with the requirements of 15 U.S.C. § 1681k in gathering and posting that employment background report because it (1) failed to notify Plaintiff at the time the report was being posted and to whom it was being reported; and (2) it failed to maintain the strictest procedures to ensure that the information being posted was complete and up to date.

69. Defendant Verification's violation of the FCRA was negligent.

70. As a result of the aforesaid unlawful acts, Plaintiff has suffered damages including lost wages, damage to reputation, mental anguish, loss of enjoyment of life, emotional distress, humiliation, and embarrassment.

71. As further result of the actions of the Defendant Verifications, the Plaintiff has and will continue to incur attorney's fees and costs in pursuing this litigation.

### COUNT SEVEN: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT NESC

72. Based on the foregoing, with specific reference to paragraphs 6 through 36, Defendant NESCs conduct created an unreasonable risk of causing emotional distress to Plaintiff by (i) negligently attributing the criminal history of another individual with a different name and a different social security number to Plaintiff; (ii) posting an inaccurate report regarding Plaintiff to Plaintiff's potential employer, even though Plaintiff disputed its accuracy; (iii) misrepresenting to Plaintiff that the initial inaccurate report was prepared using Plaintiff's social security number; (iv) refusing to inform Plaintiff before May 14, 2007 that the inaccurate report was posted to her potential employer on May 8, 2007; and (v) refusing to inform Plaintiff that the position was offered to another applicant until after Plaintiff's employment with her previous employer had already ended.

73. Plaintiff informed Defendant NESC on May 8, 2007 that the background report initially prepared was inaccurate, and from that time until May 11, 2007, she repeatedly informed Defendant NESC that she would be personally devastated if she did not have employment after May 11, 2007, the date on which she was scheduled to leave her previous employer.

74. Notwithstanding the information provided to it by Plaintiff, Defendant NESC proceeded to post the inaccurate report.

75. NESC posted the report with total disregard for the well being of Ms. Adams, completely ignoring the risk of possible error in the report. Further, the consequences of the posting of the erroneous report were the cause of the Plaintiff not being offered the position at

12

NU. Because the Plaintiff was never informed at the time of posting, there was no opportunity to rescind resignation with the previous employer C.B. Ellis.

76. As a result of the aforesaid unlawful acts, Plaintiff has suffered damages including lost wages, damage to reputation, mental anguish, loss of enjoyment of life, emotional distress, humiliation, and embarrassment.

77. As further result of the actions of the Defendant NESC, the Plaintiff has and will continue to incur attorney's fees and costs in pursuing this litigation.

**COUNT EIGHT:** **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT NESC**

78. Based on the foregoing, with specific reference to paragraphs 6 through 36, Defendant NESC either knew or should have known that posting a false employment report which had patent inconstancies, or the potential for falsities, would likely result in emotional distress for Plaintiff.

79. NESC is a contracted employment staffing agency that has a broad understanding of the effect of an erroneous background check person's future employment and reputation.

80. Further, the defendant's conduct was outrageous in that the report was posted despite obvious inconsistencies with the plaintiff's profile (wrong address, social security number, and spelling of first name). More importantly, Defendant failed to rectify the situation even after Plaintiff informed it of the inaccuracies.

81. Secondary to NESC's posting of the erroneous report; the Employer offered the position originally promised the Plaintiff to another candidate. As a result, Plaintiff is unemployed, in extreme financial distress and is emotionally traumatized.

82. The aforesaid actions on the part of the Defendant NESC were intentional in that they were willful, wanton, and or were taken in reckless disregard of the Plaintiff's rights.

13

83. As a result f the aforesaid unlawful acts, Plaintiff has suffered damages including lost wages, damage to reputation, mental anguish, loss of enjoyment of life, emotional distress, humiliation, and embarrassment.

84. As further result of the actions of the Defendant NESC, the Plaintiff has and will continue to incur attorney's fees and costs in pursuing this litigation.

COUNT NINE:             DEFAMATION (LIBEL) AS TO DEFENDANT NESC

85. Based on the foregoing, with specific reference to paragraphs 6 though 36, Defendant NESC defamed the Plaintiff.

86. On May 8, 2007, Defendant NESC published a false employment background report to the third person employer (Comensura / NU).

87. The inaccurate report published by Defendant NESC falsely states that Plaintiff was previously convicted of several crimes in Virginia. Defendant NESC's statements were not privileged.

88. Plaintiff's reputation was injured, and the position she was offered by the employer was rescinded and given to another candidate. Plaintiff is now unemployed.

89. The aforesaid actions on the part of the Defendant NESC were intentional in that they were willful, wanton, and or were taken in reckless disregard of the Plaintiff's rights.

90. As a result of the aforesaid unlawful acts, Plaintiff has suffered damages including lost wages, damage to reputation, mental anguish, loss of enjoyment of life, emotional distress, humiliation, and embarrassment.

COUNT TEN:              NEGLIGENCE AS TO DEFENDANT NESC

91. Based on the foregoing, with specific reference to paragraphs 6 though 36, Defendant NESC was negligent in its dealings with Plaintiff.

14

92. NESC is a staffing agency which recruits potential candidates for various employers (commonly referred to as a "headhunter").

93. In April 2007 NESC contacted Ms. Adams about a possible position with NU. Ms. Adams interviewed, and was hired to a one year contract with a temporary employment agency which supplies NU with employees contingent upon background and drug screen.

94. NESC was responsible for providing the background information to NU pertaining to Plaintiff's future employment.

95. NESC had a duty of care to Plaintiff when it accepted a signed authorization from the Plaintiff to conduct a background check for employment purposes. Further, the Defendant owed a duty that information it was gathering and subsequently posting was accurate and complete.

96. Defendant NESC breached this duty when it willfully and negligently posted a false report on Ms. Adams without taking reasonable steps to ensure the accuracy of the background check.

97. The action of posting the erroneous report resulted in the employer Comensura/ NU offering the position of Contract Administrator to another candidate.

98. As a result of the aforementioned unlawful acts, the Plaintiff has been left without income and suffered damages including but not limited to lost wages, lost economic opportunities and emotional distress.

99. The damages sustained by Plaintiff were a foreseeable consequence of Defendant's negligence.

15

## COUNT ELEVEN: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS TO DEFENDANT VERIFICATIONS

100. Based on the foregoing, with specific reference to paragraphs 6 through 36, Defendant Verifications negligently attributed the criminal history of another individual with a different name and a different social security number to Plaintiff, and published that inaccurate information to third parties responsible for determining Plaintiff's eligibility for employment with NU.

101. Defendant's conduct created an unreasonable risk of causing emotional distress to Plaintiff.

102. Verifications posted the report with total disregard for the well being of Ms. Adams, completely ignoring the risk of possible error in the report. Further, the consequences of the posting of the erroneous report were the cause of the Plaintiff not being offered the position at NU. Because the Plaintiff was never informed at the time of posting, there was no opportunity to rescind resignation with the previous employer C.B. Ellis.

103. As a result of the aforesaid unlawful acts, Plaintiff has suffered damages including lost wages, damage to reputation, mental anguish, loss of enjoyment of life, emotional distress, humiliation, and embarrassment.

## COUNT TWELVE: DEFAMATION (LIBEL) AS TO DEFENDANT VERIFICATIONS

104. Based on the foregoing, with specific reference to paragraphs 6 through 36, Defendant Verifications defamed the Plaintiff.

105. On May 8, 2007, Defendant Verifications published a false employment background report to a third person.

16

106. The inaccurate report published by Defendant Verifications falsely states that Plaintiff was previously convicted of several crimes in Virginia. Defendant Verification's statements were not privileged.

107. Plaintiff's reputation was injured, and the position she was offered by the employer was rescinded and given to another candidate. The Plaintiff and is now left unemployed as a result.

108. The aforesaid actions on the part of the Defendant Verifications were intentional in that they were willful, wanton, and or were taken in reckless disregard of the Plaintiff's rights.

109. As a result of the aforesaid unlawful acts, Plaintiff has suffered damages including lost wages, damage to reputation, mental anguish, loss of enjoyment of life, emotional distress, humiliation, and embarrassment.

**COUNT THIRTEEN:** **NEGLIGENCE AS TO DEFENDANT VERIFICATIONS**

110. Based on the foregoing, with specific reference to paragraphs 6 through 36, Defendant Verifications was negligent in its dealings with Plaintiff.

111. In April 2007 NESC contacted Ms. Adams about a possible position with NU. Ms. Adams interviewed, and was hired to a one year contract with a temporary employment agency which supplies NU with employees contingent upon background and drug screen.

112. Defendant Verifications was responsible for providing the background information pertaining to Plaintiff's future employment.

113. Defendant Verifications had a duty of care to Plaintiff when it accepted a signed authorization from the Plaintiff to conduct a background check for employment purposes. Further, the Defendant owed a duty that information it was gathering and subsequently posting was accurate and complete.

114. Defendant Verifications breached this duty when it willfully and negligently posted a false report on Ms. Adams without taking reasonable steps to ensure the accuracy of the background check.

115. The action of posting the erroneous report resulted in the employer Comensura/NU offering the position of Contract Administrator to another candidate.

116. As a result of the aforementioned unlawful acts, the Plaintiff has been left without income and suffered damages including but not limited to lost wages, lost economic opportunities and emotional distress.

117. The damages sustained by Plaintiff were a foreseeable consequence of Defendant's negligence.

**DEMAND FOR RELIEF**

WHERFORE, Plaintiff claims judgment against the Defendants Verifications Inc. and National Engineering Service Corporation for the following relief:

1. General and compensatory damages, including but not limited to, damages for lost wages, emotional distress, damage to reputation, loss of enjoyment of life, humiliation, and embarrassment;

2. Common law punitive damages;

3. Compensatory and Punitive damages pursuant to 15 U.S.C.A. §§ 1681e(b); 1681k; 1681n; and 1681o of the Fair Credit Reporting Act ;

4. Attorney fees pursuant to 15 U.S.C.A. §§ 1681n(a) 1681o(a);

5. Such other relief as in law or equity may pertain.

**JURY DEMAND**

Plaintiff demands a trial by jury.

> PLAINTIFF,
> DEBORAH ADAMS
>
> By: _____
> William G. Madsen (ct09853)
> wmadsen@mppjustice.com
> Todd D. Steigman (ct26875)
> tsteigman@mppjustice.com
> Katalin A. Demitrus (ct26884)
> kdemitrus@mppjustice.com
> Madsen, Prestley & Parenteau, LLC
> 44 Capitol Avenue, Suite 201
> Hartford, CT 06106
> Tel: (860) 246-2466
> Fax: (860) 246-1794
> Attorneys for the Plaintiff