UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| TYRONE HENDERSON,<br>For himself and on behalf of all<br>similarly situated individuals,<br><br>    Plaintiff,<br><br>v.<br><br>INTERSTATE BRANDS CORPORATION<br><br>    Defendant/Third-Party Plaintiff,<br><br>v.<br><br>VERIFICATIONS INCORPORATED,<br><br>    Third-Party Defendant. | Civil Action No. 3:11-cv-507-REP |

**VERIFICATIONS, INC.'S REPLY IN SUPPORT OF
<u>MOTION TO DISMISS CROSS-COMPLAINT</u>**

VERIFICATIONS, INC. ("Verifications"), by counsel, submits this Reply in support of its Motion to Dismiss the Cross-Complaint filed by Defendant/Third-Party Plaintiff Interstate Brands Corporation ("IBC") and in response to IBC's Opposition to Verifications' Motion to Dismiss the Cross-Complaint.

                      I.        INTRODUCTION

At its core, this action is one for breach of contract. IBC and Verifications entered into a contract under which Verifications would conduct background checks on certain IBC employee applicants. (Cross-Compl. ¶¶ 44-45.) According to the terms and conditions of the contract between IBC and Verifications, IBC would request that Verifications conduct background checks on certain IBC employee applicants, Verifications would conduct the requested background

check and provide information to IBC, and IBC would pay Verifications for its services. (*Id.*); Ex. A to Verifications' Memorandum in Support of Motion to Dismiss ("Mem. Supp. Mot. Dismiss").

IBC does not dispute the existence of the contract between the parties, nor does it dispute that the contract controlled the duties and obligations of the parties. In fact, Cross Claim One of IBC's Cross-Complaint ("Cross-Complaint") alleges breach of contract between it and Verifications, contending that Verifications failed to perform in accordance with the terms of the contract. (Cross-Compl. ¶¶ 44-51.) Despite the fact that this is a breach of contract action, as IBC itself alleges and concedes, IBC nevertheless attempts to manufacture an assortment of other desired claims by impermissibly recasting its breach of contract claim as other causes of action, including various tort claims.

Unfortunately for IBC, the law does not permit it to create new causes of action by simply repackaging its claim for breach of contract. The Court should decline IBC's invitation to re-write the law of contracts, and instead, grant Verifications' Motion to Dismiss ("Motion to Dismiss") so that the parties can move forward with resolving the real issue in dispute – the alleged breach of contract.

## II. STANDARD OF REVIEW

In its Opposition to Verifications' Motion to Dismiss the Cross-Complaint ("Opposition"), IBC incorrectly argues that the attachment of the parties' contract to Verifications' Motion to Dismiss should cause the Motion to be converted into one for summary judgment under Federal Rule of Civil Procedure 56. (Opp'n 2.) Notably, the contract that IBC complains about is the very same contract that IBC alleges was breached in Cross Claim One of IBC's Cross-Complaint. (Cross-Compl. ¶¶ 44-45.)

2

It is well settled in the Fourth Circuit that a court may consider a document not attached to the complaint in determining whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

A document is "integral" to the complaint if "its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007); *see also Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431-32 (7th Cir. 1993) (finding that documents are central to a party's claim when they constitute the core of the parties' contractual relationship); *Tetrev v. Pride Int'l, Inc.*, 444 F. Supp. 2d 524, 529 (D.S.C. 2006) ("[O]n a 12(b)(6) motion, the court may properly consider a contract that is integral to the allegations contained in the complaint, which is referenced in both the complaint and the plaintiff's briefing in response to the motion to dismiss, and which the plaintiff had possession of and relied upon in framing his complaint.").

In *American Chiropractic*, plaintiffs, a group of doctors, alleged that defendant, a health insurer, committed fraud by representing in its provider agreement that "it reimburses healthcare providers pursuant to the Federal Resource Based Relative Value Scale (RBRVS)," but then failing to provide the reimbursement. 367 F.3d at 233-34. Defendant attached the provider agreement to its motion to dismiss after plaintiffs failed to include it with their complaint. *Id.* at 234. In concluding that it could consider the provider agreement at the 12(b)(6) stage of the litigation, the Fourth Circuit adopted the following language from the Third Circuit:

> The rationale underlying this exception [to the rule that extrinsic evidence should not be considered at the 12(b)(6) stage] is that the primary problem raised by looking to documents outside the complaint--lack of notice to the plaintiff--is dissipated where

> plaintiff has actual notice and has relied upon these documents in framing the complaint. What the [exception] seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.

*Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks and edits omitted).

In this action, the parties' agreement clearly "gives rise to [many of] the legal rights asserted" by IBC, *see Walker*, 517 F. Supp. 2d at 806, and was relied on by IBC in framing its complaint. (Cross-Compl. ¶¶ 14-15, 44-45, 54-55, 64-65, 76-77 and 87-91.) While there is no prejudice or lack of notice to IBC in allowing the Court to consider the parties' agreement, there is a risk that IBC's representations about the agreement could be taken out of context if the Court was unable to review the agreement in its entirety. Thus, the Court should consider the agreement under the reasoning laid out by the Fourth Circuit above.[1]

Despite IBC's attempt to suggest otherwise, the issue before the Court is whether to dismiss IBC's complaint for failure to state a claim, and it is clear that the agreement will only be used by the Court to test the "legal sufficiency of" IBC's Cross-Complaint. *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) ("[T]he question is whether the Court may consider documents not attached to, but referenced in the plaintiffs' Amended Complaint, when

---

[1] Note that IBC does not challenge the authenticity of the agreement attached as Exhibit A to Verifications' Motion to Dismiss. *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006) (per curiam) (holding that a court may consider documents sufficiently referred to in the complaint on a 12(b)(6) motion "so long as the authenticity of these documents *is not disputed*.") (emphasis added); *Phillips*, 190 F.3d at 618 (4th Cir. 1999) (considering extrinsic document referenced in complaint at the 12(b)(6) stage "because the *plaintiffs do not challenge* its authenticity") (emphasis added). Rather, IBC claims only that *Verifications* has done nothing to demonstrate the authenticity of the parties' agreement. (Opp'n 2 n.2.) This is likely because the agreement is not only executed by IBC's representative, it is the precise contract that IBC seeks to enforce in Cross Claim One of its Cross-Complaint. (Cross-Compl. ¶¶ 44-45.)

4

testing the legal sufficiency of that pleading."). Thus, the parties' agreement is properly before the Court and the Motion to Dismiss should not be converted into one for summary judgment. *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 623 n.4 (E.D. Va. 2000) ("In deciding a motion to dismiss, a court is entitled to rely on [documents] quoted by, relied upon, incorporated by reference in, or otherwise integral to the complaint, and such reliance does not convert the motion into one for summary judgment.") (citations omitted).

### III. ARGUMENT AND LEGAL AUTHORITIES

#### A. IBC Cannot State A Claim For Constructive Fraud Or Fraud In The Inducement.

##### 1. *IBC has not alleged a misrepresentation of present existing fact.*

IBC's Cross-Complaint fails to allege that Verifications made a misrepresentation of material *fact*. Rather, representations made by Verifications to IBC were promises to perform or statements concerning future events. The *Packard Norfolk, Inc. v. Miller* case cited by IBC is clearly distinguishable and not instructive as to the case *sub judice*.

*Packard Norfolk, Inc. v. Miller* involved representations made by a car salesman that a new car would be delivered to plaintiff in perfect condition. 198 Va. 557, 559 (1956). In other words, *Packard Norfolk* involved false representations made about the *current condition* of a *tangible object*. The court rejected defendant's argument that, because the representations were made several days before the sale of the car, they were expressions of opinion promissory in nature. *Id.* at 562-63. Instead, the court found that at the time the statements were made the defendant salesman intended to convince the plaintiff that the car was *then* in perfect condition and also that it would be in the same condition when delivered. *Id.* at 563. Such statements, the court held, were clearly representations of present fact and "not a mere opinion as to the car's quality or a promise of what would be performed in the future." *Id.*

In this action, Verifications is alleged to have made statements regarding *services* that it was to perform in the *future*. (Cross-Compl. ¶¶ 64, 90.) (background check and adverse employment process "would comply with all applicable state and federal laws, including the FCRA"); (*Id*. at ¶ 91.) (background check and adverse employment process "would be accurate and provide avenues by which errors . . . would be promptly corrected."). In fact, the background check at issue in this litigation was not even conducted until more than five years after IBC and Verifications entered into their contractual agreement. (Mem. Supp. Mot. Dismiss at Ex. A.)

The statements complained of by IBC are clearly promises to perform and statements concerning future events. IBC has not sufficiently alleged that its fraud claims are based on anything other than the alleged failure to perform these promises. Accordingly, IBC has not and cannot allege the necessary elements of a fraud claim. On this basis, Cross Claims Three and Five should be dismissed with prejudice.

### 2. *IBC has not met the pleading requirements of Federal Rule of Civil Procedure 9(b).*

In its Opposition, IBC makes no effort to argue that it has complied with the pleading requirements of Federal Rule of Civil Procedure 9(b). Instead, IBC tries to skirt its pleading obligation by essentially concluding that there has been "no harm, no foul." (Opp'n 13.) Unfortunately for IBC, the self-serving conclusion that its pleadings are good enough is not the standard recognized by the Federal Rules. Fed. R. Civ. P. 9(b).

In order to satisfy Rule 9(b), a plaintiff *must* plead circumstances such as the "time, place, content, and identity of authorship of any alleged misrepresentation." *Goldstein v. Malcolm G. Fries Y Assocs.*, 72 F. Supp. 2d 620, 627 (E.D. Va. 1999) (emphasis added). In its Cross-

Complaint, IBC entirely fails to allege the place of the fraudulent misrepresentations, including whether such statements were made by Verifications in its contract, whether they were made publically through some other forum, or whether they were made verbally to IBC. IBC does not allege *who* is the author or speaker of the statements. IBC does not state *when* the misrepresentations were allegedly made and whether they were made before or after the parties entered into their contract. Surely, IBC is aware of these requirements. *See Wal-Mart Stores, Inc. v. J.A. Fielden Co., Inc.*, 440 F. Supp. 2d 523, 529 (W.D. Va. 2006) (finding plaintiff's argument that its fraud claim should not be dismissed under Rule 9 because discovery is needed to uncover further information relating to the claim to be disingenuous given that the party claimed the representations were made directly to it, which should enable the party to plead the time, place, content, and persons involved with particularity).

As a result of IBC's failure to provide any meaningful information relating to its fraud claims, Verifications does not have "sufficient information to formulate a defense," protection "against frivolous" claims, or protection against unnecessary harm to its "goodwill and reputation." (Opp'n 12.); *Harrison Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Accordingly, the purposes behind Rule 9(b) have *not* been effected and Cross Claims Three and Five should also be dismissed on this basis.

        **3.**    *IBC's reliance on three unrelated lawsuits to state a claim for fraud is improper and unpersuasive.*

The Court should look only to the IBC's Cross-Complaint as plead, together with the parties' properly attached agreement, in determining whether certain cross claims asserted by IBC should be dismissed for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Gasner*, 162 F.R.D. at 281. Nevertheless, in an attempt to salvage its fraud claims, IBC alleges new facts and attaches extrinsic documents in the hopes that this information

7

will sufficiently muddy the water to allow IBC's fraud claims to survive Verifications' Motion to Dismiss. IBC's tactics are thinly-veiled and should be rejected.

The issue before the Court is whether IBC's Cross-Complaint, on its face, states a viable cause (or causes) of action against Verifications. Whether or not Verifications was named in a lawsuit ten years ago in Florida has no bearing on this dispute. Ironically, in IBC's haste to muddy the issues in this case, it neglected to realize (or at least neglected to disclose to the Court) that the *Adams* case resulted in a defense verdict in favor of Verifications. *Adams v. Nat'l Eng'g Serv. Corp., et al.*, No. 3:07-cv-01035 (D. Conn).

Regardless of the *Adams* defense verdict, or the outcomes of the other matters mentioned by IBC, the fact that Verifications has been sued three times in a period of ten years has no bearing on whether IBC's Cross-Complaint states a viable claim for fraud. For the reasons stated, IBC has failed to state a claim for fraud. The Court should see the extrinsic issues raised by IBC as exactly what they are – a transparent attempt to camouflage the fatal deficiencies in its Cross-Complaint.

B. **IBC's Tort Claims For Fraud And Negligence Are Barred By The Source Of Duty And The Economic Loss Rules.**

   1. *IBC cannot allege that Verifications owed IBC a tort law duty independent of Verifications' contractual obligations.*

IBC concedes that when the sole source of the duty breached by a defendant is a contract, the economic loss rule applies to preclude actions in tort based on a violation of that duty. (Opp'n 8.); *Filak v. George*, 267 Va. 612, 618 (2004) ("[L]osses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts.").

      **a.**    **IBC cannot state a claim for breach of a duty that existed prior to the parties' agreement.**

In the first part of Section II.B. of its Opposition, IBC attempts to argue, under *Abi-Najm v. Concord Condominium*, that the economic loss rule does not apply to this case because Verifications breached a tort law duty that existed *prior* to the creation of the parties' contractual agreement, "*i.e.*, the duty not to commit fraud." 280 Va. 350 (2010); *see also Tidewater Beverage Servs., Inc. v. Coca Cola Co., Inc.*, 907 F. Supp. 943, 948 (E.D. Va. 1995). As the *Abi-Najm* court explained, when a fraud is alleged to have occurred before a contract is created, the source of the duty breached cannot logically be said to be the contract, and the economic loss rule does not apply to bar an independent claim for fraud. 280 Va. at 363. However, IBC's argument under this line of cases presupposes that IBC can state a claim for fraud. As explained above, it cannot. Thus, IBC has not stated a claim for breach of a duty that existed prior to the parties' agreement and the reasoning of *Abi-Najm* does not apply.

      **b.**    **IBC cannot allege that Verifications owed IBC a tort law duty independent of Verifications' contractual obligations.**

In the second and third parts of Section II.B. of its Opposition, IBC attempts to argue that Verifications had a "common law duty to act reasonably to prevent harm" to IBC and that Verifications became subject to "the duty of acting carefully" when it undertook "to conduct background checks on IBC's employee applicants." (Opp'n 9-11.) Although, as IBC recognized, "a single act or occurrence can, in certain circumstances, support causes of action both for breach of contract and for breach of a duty arising in tort," every court to recognize this possibility has held that the tort duty allegedly violated must be separate and independent from the defendant's duty or duties existing by virtue of the parties' contract. *Dunn Const. Co. v.*

9

*Cloney*, 278 Va. 260, 266 (2009) (citing *Foreign Mission Bd. of S. Baptist Convention v. Wade*, 242 Va. 234, 241 (1991)).

Thus, "[a] tort action cannot be based solely on a negligent breach of contract." *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 559 (1998). Rather, the law of torts "provides redress *only* for the violation of certain common law and statutory duties involving the *safety of persons and property*, which are imposed to protect the broad interests of society." *Kaltman v. All Am. Pest Control, Inc.*, 281 Va. 483, 492-93 (2011) (citing *Filak*, 267 Va. at 618) (emphasis added).

All of the cases relied on by IBC to try and establish that Verifications owed IBC a tort duty separate and independent from its contractual duties deal with these common law duties to act reasonably to prevent injury to persons or property damage and to protect the public safety. Because IBC has not suffered injury to its person or property, Verifications could not have violated these independent duties imposed by tort law. The cases relied on by IBC do not apply to the facts at hand and do not allow IBC to state a tort claim against Verifications.

For example, in *Jappell v. Am. Ass'n of Blood Banks*, plaintiffs' child died after receiving a transfusion of blood tainted with the Human Immunodeficiency Virus (HIV). 162 F. Supp. 2d 476, 478 (E.D. Va. 2001). Plaintiffs brought a wrongful death action against the organization responsible for promulgating blood donor screening guidelines for negligent failure to advise its member blood banks to use reasonable, available methods to screen out contaminated blood. *Id*. The court found that because the defendant undertook to set standards for the *safety* of the nations blood supply, it owed a legal duty of care to recipients of transfusions. *Id*. at 481; *Gulf Reston, Inc. v. Rogers*, 215 Va. 155, 159 (1974) (recognizing that common law duty to protect others from *personal injury* may arise in certain circumstances).

10

In *Boland v. Rivanna Partners, LLC*, plaintiff sued an independent contractor hired by a commercial landlord to perform non-delegable snow removal duties for personal injuries suffered after she slipped on black ice that had not been cleared from a parking area. 69 Va. Cir. 308, 2005 WL 3105339, at *1 (Nov. 1, 2005). The court held that because the independent contractor undertook to provide a service "which clearly impact[ed] the safety of other persons," it had a duty, separate and independent from its contractual duties to landlord, to act reasonably for the protection of the plaintiff and the public. 2005 WL 3105339, at *3.

Similarly, in *Didato v. Strehler*, the court recognized that one has a legal duty to act with care *only where* he undertakes to render "services necessary for the protection of the [another's] *person or things*" and that liability may be imposed where "physical harm result[s] from [that person's] failure to exercise reasonable care." 262 Va. 617, 629 (2001) (citing Restatement (Second) of Torts § 323); *see also* (Opp'n 10.)

In none of the cases discussed above, and cited by IBC, was there a contract between the plaintiff and defendant and, thus, none of the courts in those cases had to decide whether a common law duty imposed to protect the broad interests of society existed independent of any contractual duties. These cases are not on point and do not allow IBC to state a tort claim against Verifications.

In *Kaltman v. All Am. Pest Control, Inc.*, also cited by IBC, plaintiffs did contract with defendant to have it perform pest control treatment on their home. 281 Va. 483, 487 (2011). After defendant used a commercial pesticide on plaintiffs' home that had not been approved for residential use, plaintiffs' home was rendered uninhabitable for a year, they sustained physical and emotional injuries, and they incurred expenses to "remediate" the damage to their home and personal effects. *Id*. at 488. Plaintiffs sued defendant for negligence. *Id*. The Virginia Supreme

Court found that plaintiffs were seeking recovery not for damage caused by defendants failure to provide the service for which it contracted, *i.e.*, a failure to control pest infestation in their home, but rather for personal injuries and damages to their property that resulted from defendant's breaches of independent common law and statutory duties to protect persons and property from injury. *Id*.

Unlike in the above cases, IBC has not alleged that Verifications breached a common law duty to protect persons or property from injury. Rather, IBC has simply recast its breach of contract claim as a tort claim.

In *Maersk Line Ltd. v. Care*, the court found that where plaintiff's tort and contract claims were almost identical and both alleged a breach of defendant's duty to provide a safe cargo, plaintiff "effectively admit[ed] that there [was] no distinction in the [duties] alleged to have been breached." 271 F. Supp. 2d 818, 823 (E.D. Va. 2003). As such, the court found that if there was a breach of this duty, plaintiff could "seek recovery under the contract" and that any other result would "further dilute[] the role of contract law in our legal system." *Id*.

Here, IBC's tort and contact claims are essentially identical. IBC alleges that Verifications had a contractual duty "to conduct background checks on IBC's employee applicants," and a common law duty "to conduct background checks on IBC's employee applicants reasonably," (Cross-Compl. ¶¶ at 44, 118). To find that IBC's tort claims are based on anything other than an alleged breach of Verifications' contractual duties would dilute the role of contract law in our legal system. 271 F. Supp. 2d at 823; *Richmond Metro. Auth.*, 256 Va. at 559 (finding that plaintiff's claim which alleged nothing more than a negligent performance of contractual duties was not actionable in tort).

12

Moreover, as noted, IBC has not alleged that Verifications breached a common law duty to protect persons or property and the only source of a duty allegedly breach by Verifications is the parties' contract. Thus, the economic loss rule applies and Cross Claims Three, Five, and Seven should be dismissed.

### 2. *IBC is only seeking recovery of economic losses.*

As IBC correctly identifies the damages claimed in tort law cases may readily be classified as "claims for injuries to person or property." (Opp'n 11.); *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 425 (1988). These damages are distinguishable from those damages claimed in contract cases, which are known as "economic losses." *Sensenbrenner*, 236 Va. at 425; *Crawford v. Deutsche Bank AG*, 244 F. Supp. 2d 615, 618 (E.D. Va. 2003) ("These losses are neither personal nor property injuries; they are instead wholly economic losses.").

IBC's claim that it is trying to collect anything more than economic loss is untenable. The essence of IBC's claims against Verifications is that IBC may suffer *financial loss* because Verifications did not perform as it was expected to under the parties' contract. *Filak*, 267 Va. at 618 ("[L]osses allegedly suffered as a result of [defendant's] failure to fulfill her oral contract to procure a policy that would pay the total replacement costs of the plaintiffs' home within a few days after sustaining a total loss [were purely economic]"). IBC is not seeking to recover for injuries to either person or property, and its claimed damages are best characterized as economic losses. *Doe v. Irvine Scientific Sales Co., Inc.*, 7 F. Supp. 2d 737, 743 (E.D. Va. 1998) ("These losses are neither personal nor property injuries, and are appropriately characterized as economic losses. Consequently, the economic loss rule applies to the [plaintiffs'] claims and precludes their claims for recovery from Defendants under a negligence theory.").

13

The economic loss rule applies to IBC's claims and precludes its attempt to recover economic losses from Verifications under a tort law. *Kohl's Dept. Stores, Inc. v. Target Stores, Inc.*, 214 F.R.D. 406, 415 (E.D. Va. 2003) ("The economic loss rule requires that parties seeking recovery for economic losses must pursue their remedy through contract law rather than tort law."). Accordingly, Cross Claims Three, Five, and Seven should be dismissed.

C. **IBC Fails To State A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing.**

Verifications does not dispute that every contract contains an implied covenant of good faith and fair dealing, or that bad faith may give rise to a breach of contract claim. Verifications' position, however, is that Virginia law does not recognize a *separate*, additional, cause of action solely for breach of this implied covenant. *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 251 Va. 28, 33 (1996) ("while a duty of good faith and fair dealing exists . . . breach of the implied duty . . . gives rise only to a cause of action for breach of contract."). None of the cases cited in IBC's Opposition challenge this proposition.

Despite IBC's claims to the contrary, Verifications' reliance on *Frank Brunckhorst Co., L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 462 (E.D. Va. 2008), is not misplaced. In *Frank Brunckhorst*, the court expressly stated that "a breach of those duties [imposed by the implied covenant of good faith and fair dealing] only gives rise to a breach of contract claim, not a separate cause of action." That is Verifications' position in this case. Moreover, by trying to state a claim for *both* breach of contract and breach of an implied contractual term, IBC *is* in fact trying to establish a legal duty that is independent of the duties imposed by the parties express contract (otherwise, IBC would simply bring a claim for breach of contract alone). Thus, *Frank Brunckhorst* is applicable and fatal to IBC's attempt to engineer a separate claim where none exists.

14

Further, Verifications does not argue that IBC is relying on the implied covenant of good faith and fair dealing to "create" a contract between the parties. Like IBC, Verifications concedes the existence of a contract between the parties. More simply, there is no need to "create" a contract because both parties concede that a contract already exists. *See* Ex. A to Mem. Supp. Mot. Dismiss. Thus, IBC's discussion of *L & E Corp. v. Days Inns of Am., Inc.*, 992 F.2d 55 (4th Cir. 1993), is inapposite.

Because Virginia law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing separate from, or in addition to, a claim for breach of contract, Cross Claim Two fails as a matter of law and should be dismissed with prejudice.[2]

### D. IBC Fails To State A Claim For Failure To Perform In A Workmanlike Fashion.

In *Goddard v. Protective Life Corp.*, this Court rejected the very claim being made by IBC in this action. 82 F. Supp. 2d 545, 556-57 (E.D. Va. 2000). In *Goddard*, the Court stated that while Virginia law has recognized an implied warranty in the provision of services in the context of construction contracts, plaintiffs failed to identify any basis for extending the narrow warranty recognized by the Supreme of Virginia beyond the context of construction law. *Id.* at 556. In dismissing the plaintiff's breach of warranty claim, this Court concluded that although reference to a more general application has been made, in practice the Virginia Supreme Court has not expanded this doctrine beyond the limited context of construction cases. *Id.* at 556-557. In the absence of such authority, this court has counseled against so extending this warranty. *Id.*.

---

[2] IBC refers to the "covenant of good faith and fair dealing" throughout Cross Claim Two, (Cross-Compl. ¶¶ 56-59), however, notably moves away from this language in its Opposition in favor of a general reference to the "breach of an implied term of contact." To the extent IBC seeks to draw a distinction here between two separate claims, Virginia law is equally lacking of support for a cause of action for breach of implied duties arising out of a written contract. *See Healy v. Chesapeake Appalachia, LLC,* No. 1:10-cv-00023, 2011 WL 24261, at *14 (W.D. Va. Jan. 25, 2011).

15

IBC fails to cite any cases applying the implied warranty to perform in a workmanlike manner in situations similar to the one at issue here. Nor has it cited any cases decided after the *Goddard* decision authorizing this Court to extend this implied warranty in all contexts. Accordingly, the Court should continue to follow the reasoning of the *Goddard* Court and dismiss Cross-Claim Four for failure to state a claim.

Moreover, in support of Cross-Claim Four, IBC claims that Verifications breached its implied duty to perform in a workmanlike manner by including "erroneous information on Henderson's background report" and by "erroneously conclud[ing] that its initial investigation was accurate" when it conducted its reinvestigation. (Cross-Compl. at ¶¶ 79-80.) This cause of action is based on nothing more than the allegation that Verifications did not perform as it was expected to under the parties' contract. More simply, IBC is simply trying to find another way to reassert its breach of contract claim, and for this reasons, Cross-Claim Four should be dismissed with prejudice. *Goddard*, 82 F. Supp. 2d at 557 (alternatively disposing of plaintiff's implied warranty to perform in a workmanlike manner claim on the same grounds as it dismissed plaintiff's negligence claims, since, "if [the implied warranty] exists, [it] is no more and no less than a negligence standard").

E.   **IBC Fails To State A Claim For Equitable Indemnification.**

IBC claims that *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967 (4th Cir. 1987), requires this Court to find that IBC has stated a claim for equitable indemnification. However, because *Yohay* is distinguishable from the facts of this case, this Court need not follow its holding. Rather, the Court should find highly persuasive the cases almost exactly on point, as cited in support of Verifications' Motion to Dismiss.

16

In *Yohay*, a consumer plaintiff became aware that the defendant credit union, with whom plaintiff had no relationship, obtained a copy of his credit report. *Id*. 827 F.2d at 969. Upon further investigation, the plaintiff learned that the credit union had obtained his credit report at the request of his ex-wife, who was an attorney on retainer with the credit union. *Id*. The plaintiff then sued the credit union for violations of the Fair Credit Reporting Act ("FCRA"). *Id*. The credit union filed a third-party complaint against the plaintiff's ex-wife for indemnification. *Id*.

The court in *Yohay* determined that plaintiff's ex-wife "used, or caused an employee of the Credit Union to use, the Credit Union's computer to obtain [credit information of plaintiff]." *Id*. Although the credit union and the plaintiff's ex-wife both technically qualified as "users" under the FCRA, and thus could be liable to the plaintiff, the court found that "[b]ut for [ex-wife's] desire to obtain the report on [plaintiff], the Credit Union would not have so done." *Id*. at 974. Accordingly, the court held that the ex-wife, as the active wrongdoer, could be liable to credit union, as a passive wrongdoer, for the entire amount owed to the plaintiff by the credit union. *Id*.

The situation in *Yohay* is clearly distinguishable from the facts in this action. Here, it is not the case that IBC is a "passive wrongdoer" that would not have obtained Henderson's information but for a desire on the part of Verifications. Rather, the "but for" in this action is but for IBC's request that Verifications conduct a background check on Henderson, no background check would have been conducted. IBC was an active and intentional "user" of Henderson's consumer information, and requested this information from Verifications in the course of its review of Henderson's application for employment with IBC. (Cross-Compl. ¶ 30.)

17

Further, the claims for which IBC seeks reimbursement are not claims based upon its actions as a "passive wrongdoer" but instead are claims grounded in IBC's alleged violation of its independent duty to abide by the mandates of the FCRA. IBC is rightly charged with these duties and is not entitled to indemnification from Verifications.[3] (Mem. Supp. Mot. Dismiss 13-15.)

IBC has not and cannot assert a claim for equitable indemnification and thus, the Court should adopt the reasoning of the litany of cases cited by Verifications in support of its Motion and dismiss Cross Claim Eight with prejudice.

## V. CONCLUSION

IBC's Cross-Complaint, at its core, states nothing more than a claim for breach of contract. IBC contends that Verifications did not perform in accordance with the contract. Verifications denies IBC's claim. The remaining eight claims represent IBC's best efforts to manufacture additional, unsupported causes of action by restating its breach of contract claim in the form of various other causes of action which are unavailable by law. For the reasons stated herein, and more fully detailed in Verifications' Memorandum of Points and Authorities in Support of Motion to Dismiss the Cross-Complaint, Verifications, Inc. respectfully requests that the Court dismiss Cross Claims Two through Nine of the Cross-Complaint with prejudice.[4]

---

[3] Note also that paragraph 1E of the parties' User Certification, attached as Exhibit A to the Verifications' Memorandum in Support of its Motion, provides that "[IBC] agrees that if adverse employment action is to be taken, based either in whole or part on information provided by [Verifications] in a Consumer Report, **[IBC] will comply with adverse action procedures as defined in FCRA Regulations**."

[4] In its Opposition, IBC voluntarily moves to dismiss, without prejudice, its claims for unjust enrichment and for violation of 15 U.S.C. § 1681e. For the reasons stated in Verifications' Memorandum of Points and Authorities in Support of Motion to Dismiss the Cross-Complaint, which arguments are wholly unopposed by IBC, Verifications respectfully requests that this Court dismiss Cross-Claims Six and Nine with prejudice.

Respectfully submitted,

VERIFICATIONS, INC.


_____/s/_____
Charles K. Seyfarth (Va. Bar No. 44530)
LeCLAIRRYAN, A Professional Corporation
Riverfront Plaza – East Tower
951 E. Byrd Street, Eighth Floor
Richmond, Virginia 23219
Telephone: (804) 916-7159
Facsimile:  (804) 916-7259
Charles.Seyfarth@leclairryan.com

Megan S. Ben'Ary (Va. Bar No. 47349)
Nicole Pszczolkowski (Va. Bar. No. 80826)
LeCLAIRRYAN, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, VA  22314
Telephone: (703) 684-8007
Facsimile:  (703) 647-5983
Megan.Benary@leclairryan.com
Nicole.Pszczolkowski@leclairryan.com

***Counsel for Verifications, Inc.***

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 28th day of November, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send a notification of such filing to the following:

Dale W. Pittman, Esquire
The Law Office of Dale W. Pittman, P.C.
112-A W. Tabb St.
Petersburg, Virginia 23803

Leonard A. Bennett, Esquire
Consumer Litigation Associates, P.C.
12515 Warwick Blvd., Suite 100
Newport News, Virginia 23606

Christopher C. North, Esquire
The Consumer & Employee Rights Law Firm, P.C.
751-A Thimble Shoals Blvd.
Newport News, Virginia 23606

*Counsel for Plaintiff*

Joseph W. Clark, Esquire
Edward M. Wenger
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC  20001

*Counsel for Interstate Brands Corporation*

                                              /s/
                                  Megan S. Ben'Ary (Va. Bar No. 47349)
                                  LeCLAIRRYAN, A Professional Corporation
                                  2318 Mill Road, Suite 1100
                                  Alexandria, VA  22314
                                  Telephone: (703) 684-8007
                                  Facsimile:  (703) 647-5983
                                  Megan.Benary@leclairryan.com

                                  *Counsel for Verifications, Inc.*